[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 621 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 622 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 624 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 625 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 626 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 627 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 629 
The question in the case, on the facts, is a narrow one. The defendants discounted a bill of exchange in the regular course of business, which was endorsed by one Converse, their cashier, and transmitted to the Ohio Life Insurance and Trust Company, in the city of New York, for collection only. Before the bill matured the trust company transferred it to the plaintiffs as collateral security for borrowed money. The plaintiffs, at the time of such transfer, had no actual notice of the ownership of the bill by the defendants, but received the same bona fide, and in the usual course of business. The bill was made payable to the order of D.C. Converse, cashier, and endorsed "pay to the order of Edwin Ludlow, cashier, D.C. Converse, Cr." The only question is, whether this was the endorsement of the Muskingum Branch Bank, or of Converse individually. If it was an official and not the private act of Converse, in fact done on behalf of the bank, as the bill was negotiated to the plaintiffs, who are bona fide
holders, the endorsement would conclude the bank in favor of them, though the Ohio Life Insurance and Trust Company, its agent, acted in bad faith, and disobeyed its instructions, by negotiating the bill for its own benefit instead of collecting it.
It seems to me, on the facts, that but one interpretation can be given to Converse's acts; Converse was the defendants' cashier. A bill drawn to "D.C. Converse, cashier," was discounted by the defendants. The facts are found, and it is not controverted, that the Muskingum Bank owned the draft, and that it was sent to the Ohio Life Insurance and Trust Company for collection. The trust company received it from the bank with the endorsement "D.C. Converse, Cr." Now, how can it be pretended that this was the individual and not the official act of Converse? *Page 630 
Although "D.C. Converse, cashier," was the payee of the draft, the bank claimed it as its property, and to deal with it as such. Indeed a bill drawn to "D.C. Converse, cashier," is, in judgment of law, payable to the bank of which he is the officer. Being the property of the bank, the endorsement "D.C. Converse, Cr." was made by the proper officer, for a proper purpose. It was, therefore, an official endorsement. Had there been nothing in the case to connect the bill with the defendants' bank, Converse would have been regarded as the payee and the endorser individually, and the abbreviation affixed to his name considered as a descriptio personæ but when his official position is shown, connected with the facts that the bill was the property of the bank, and in the regular course of business was transmitted to its agent for collection, it is then shown that the endorsement is an official one. The case of The Bank of Genesee
v. Patchin Bank (19 N.Y.R. 312), is, on this question, a controlling authority. In that case, S.B. Stokes, the cashier of the Patchin Bank, sent to the Bank of Genesee, to be discounted, a bill of exchange payable to the order of "S.B. Stokes' Cas.," endorsed by him with the same addition to his signature, and enclosed in a letter dated at the banking house, and signed "S.B. Stokes, Cas." It was held that these circumstances imported that the endorsement was that of the Patchin Bank, in the regular course of business, and not that of S.B. Stokes individually. There is this difference only in the cases. In the one cited the bill was sent for discount, in this for collection; but plainly that could not affect the question. The intention in each case to make the bank a party to the paper is equally carried out.
I think, therefore, the endorsement in this case was that of the Muskingum Bank, and bound it as such to a bona fide holder of the bill. Its liability as endorser certainly cannot be qualified by the consideration that the bill was sent to its agent not to be negotiated, but for collection *Page 631 
only. The object of the endorsement was to create a privity between any holder and the parties to the paper, and it accomplished it. There was nothing on the face of the endorsement to convey to third parties knowledge of the single purpose for which it was made, nor were they even bound to ascertain that extrinsic fact. The bank reposed confidence in the caution of its cashier, and in the honesty of its agent. The cashier neglected to add the restrictive words which would have limited the negotiability of the bill, and the agent abused the trust. I do not think that the plaintiff, who became a holder in good faith, and in the regular course of business, should bear a loss occasioned by the negligence of the one and the bad faith of the other agent.
The judgment of the supreme court should be affirmed.