Jesus Maria Luna and another

*v.*

Paul Mohr.

January Term, 1884.

1. BILL OF EXCHANGE—PAROL EVIDENCE.
In *assumpsit* against defendant personally, as drawer of a bill of exchange, which is made neither in his name nor in that of the firm of which he is a member, but is signed by a third person as "agent," and is drawn on defendant's firm, it is not competent to show by parol evidence that the drawer is defendant's agent, and that defendant is the real maker of the draft.[1]

2. SAME—SPECIAL COUNTS—PLEA—DEFECTIVE VERIFICATION.
In such a case, where special counts of the declaration seek to charge the defendant as drawer, through his agent or partner, the defective verification of defendant's plea, denying his signature under oath, as required by Prince, Gen. Laws, p. 119, § 30, will not be taken as an admission of the truth of the special counts. It is essential to establish his connection with the instrument by competent proof.

3. PRACTICE—PLEADING AND PROOF.
Where a demurrer has been sustained to one of the counts in the declaration, it is error to permit such count to be read to the jury, or to receive evidence thereupon.

4. ASSUMPSIT—PLEA—NON ASSUMPSIT—NON EST FACTUM.
In *assumpsit* on a bill of exchange, the proper plea is *non assumpsit*, a denial under oath of the signature. Prince, Gen. Laws, p. 119, § 30. The plea under oath of *non est factum*, as required by section 31, Id., is only applicable to instruments under seal.

*Catron & Thornton* and *Gildersleeve & Knaebel,* for plaintiffs.

*Fiske & Warren,* for defendant.

[1] See note at end of case.

Bristol, J. The plaintiffs in the court below, J. M. Luna & Bro., as copartners, brought suit and obtained judgment against the defendant, Paul Mohr, in the sum of $12,525 damages and $107.55 costs. The case is here on appeal by the defendant below, Paul Mohr, and was argued and submitted at the last term. The original declaration contained the common counts, and, in addition thereto, a special count, as follows, viz.: "For that whereas the defendant, by his duly authorized agent, Max Lichtenthal, heretofore, to-wit, on the twenty-fifth day of November, A. D. 1876, at, to-wit, the county of Valencia aforesaid, according to the usage and custom of merchants, made his certain bill of exchange in writing, bearing date day and year aforesaid, and then and there directed the said bill of exchange to the said defendant by the name of Mohr & Mohr, by which said bill of exchange the said defendant, by his agent, Max Lichtenthal, then and there requested the said defendant by the name of Mohr & Mohr, three days after sight, to pay to the order of said plaintiffs by the name, style, and firm of J. M. Luna & Bro., ten thousand dollars, for value received," and averring presentation and protest for non-acceptance.

To this declaration the defendant pleaded *non-assumpsit.* And to the special count on the bill of exchange, the defendant also pleaded what is called in the record *"non est factum."* Afterwards, by leave of the court, the plaintiffs amended the said special count on the bill of exchange by averring that defendant, with some other person or persons to them unknown, trading and doing business under the firm name and style of Mohr & Mohr, by their agent, Max Lichtenthal, written "Max Lichtenthal, agent," (meaning agent for said Mohr & Mohr,) made the draft or bill of exchange in question, and averring demand and protest for non-acceptance and non-payment.

To this special count as amended the defendant interposed a demurrer, which was sustained by the court below, with leave to the plaintiffs to file two additional special counts by way of amendment of the declaration, which was accordingly done. One of these additional special counts is upon said bill of exchange and alleges, among other things, that the defendant and some other person or persons to the plaintiffs unknown, "trading and doing business under the firm name and style of Max Lichtenthal, agent, at Santa Fe, New Mexico; that is to say, at the county of Valencia aforesaid, to-wit, on the twenty-fifth day of November, A. D. 1876, made their certain bill of exchange in writing, under and by the said firm name and style of "Max Lichtenthal, agent," and avers demand and protest for non-acceptance and non-payment, etc. The other of said additional special counts is also upon said bill of exchange, and alleges, among other things, that the defendant, Paul Mohr, together with some other person or persons whose names are to the plaintiffs unknown, trading and doing business

under the firm name and style of Mohr & Mohr, at Santa Fe, New Mexico ; that is to say, at the county of Valencia aforesaid, heretofore, to-wit, on the twenty-fifth day of November, 1876, made their certain bill of exchange in writing, bearing date the day and year aforesaid, and then and there directed the said bill of exchange to themselves, the said Messrs. Mohr & Mohr, at Cincinnati, etc., and avers demand and protest for non-payment and non-acceptance, etc.

On motion of defendant, and order of the court, the plaintiff filed a bill of particulars as follows, viz. :

(1) "The bill of exchange is the same one on file in the cause declared on in the first count of plaintiff's original petition.

(2) "The second (common) count is for ten thousand head of sheep or more which plaintiffs sold to defendant and some one else, whose name is to plaintiff unknown, and offered and tendered at La Junta, Colorado, as per contract made by defendant by his agent with plaintiffs some time in the month of December, 1876, or January, 1877, or thereabouts, plaintiffs not being able to remember now the exact date, $16,000.

(3) "For money, about that time last mentioned, the exact date plaintiffs do not now remember, lent and advanced to said defendant, through his agent, $10,200.

(4) "For money paid, laid out, and expended by plaintiffs to the said defendant, and to the agent of said defendant, for the use of said defendant and some other person, whose name is unknown at the time last aforesaid, the exact date of which plaintiffs cannot now state, $10,200.

(5) "For money received by said defendant and some other person at present unknown to plaintiffs, through the agent of said defendant, for the use and benefit of said defendant, at about the time last aforesaid, the exact date of which plaintiffs cannot now remember, $10,200.

(6) "For an account stated by and between plaintiffs and defendant's agent, acting for and on behalf of defendant, found due, the exact date of which plaintiffs cannot now remember, but about February or March, 1877, $10,200."

The plaintiffs' cause of action, therefore, is presented by the two special counts last aforesaid, the common counts and bill of particulars covering the entire declaration.

The bill of exchange, which was filed with the declaration, is as follows :

"$10,000.                      SANTA FE, NEW MEXICO, Nov. 25, 1876.

"Three days after sight pay to the order of J. M. Luna & Bro., ten thousand dollars, value received, and charge the same to account of Messrs. Mohr & Mohr, Cincinnati, Ohio.

"MAX LICHTENTHAL, Agent."

To the cause of action thus presented the defendant pleaded the general issue, and also interposed a special plea to the two special counts on the bill of exchange, such special plea being as follows: "And for a further plea in this behalf, as to the last and additional counts of the said second amended petition or declaration, the said defendant says that the said plaintiffs ought not to have or maintain their aforesaid action against him, because he says that the said supposed bills of exchange in the said two counts mentioned are not his deeds, and that he never executed the said instruments, nor either of them, nor authorized any person to execute them, or either of them, for him, and that the signatures thereto are not his signatures, and of this he puts himself upon the country," etc.

This special plea (designated in the record and by the parties as a plea of *non est factum*) purports to have been verified by the oath of the defendant, before a notary public, in the state of Ohio; but the record discloses no evidence of the notary's official character, or of his authority under the laws of Ohio to administer oaths other than what purports to be his signature, certificate, and notarial seal. Plaintiffs demurred to this special plea on the ground that it did not appear that the plea had been verified before an officer authorized to administer oaths. The demurrer was overruled and the ruling was excepted to. Issues having been joined upon this condition of the pleadings, the parties went to trial, resulting in a verdict and judgment for the plaintiffs for damages and costs as aforesaid. A large amount of evidence, with numerous rulings thereon, with exceptions, is presented by appellant's bill of exceptions. The court below, on its own motion, gave an elaborate charge to the jury, much of which was excepted to by the appellant as well as to refusals to charge as requested by him. Every step taken by either party during the progress of the trial seems to have been objected to by the opposite party. An interminable number of questions are thus presented by the record; it would be unseemly to attempt to pass upon all of them.

The first question naturally presenting itself relates to defendant's special plea to plaintiffs' special counts on the bill of exchange, designated in the record as a plea of "*non est factum.*" The plea of *non est factum* is only applicable in actions on written instruments under seal. In common law pleadings this plea was never interposed as a defense to an action of *assumpsit* on any simple contract in writing, as a promissory note or bill of exchange. Our statute in express terms makes this distinction. Section 30, Prince, Gen. Laws 119, is as follows: "When any party to a suit, either as principal or security or indorser, founded on any written contract, covenant, or agreement whatsoever, shall deny his signature, he shall do the same under oath." The next succeeding section (31) is as follows: "In all cases where a suit has been instituted upon any writing obligatory, or may be so instituted, the execution of the instrument shall be regarded as proven and the plea of *non est factum* shall be regarded

as unavailing, until the person filing such plea shall have made oath that he never executed the said instrument nor authorized any person to execute it for him."

A "writing obligatory" is a bond, or some written obligation under seal. It is a term that is never applied to simple contracts, though they may be in writing. These two sections of our statutes are quite distinct and independent, and refer to two separate classes of written instruments. Section 30 can only apply to simple written contracts, such as bills of exchange and promissory notes, and other written instruments not under seal. It specifically relates to the signature to any such simple contract of the party sought to be charged thereby, and the denial thereof by him, and to nothing else. The proper special plea, under this provision of the statute, would be that such signature is not the signature of the defendant. The plea that it is not his deed does not apply. The bill of exchange in question has upon its face the signature of Max Lichtenthal, agent, as drawer, and the name of the firm of Mohr & Mohr as drawees. The plaintiffs seem to have experienced great difficulty and doubt as to the capacity in which the defendant should be sued, and it is extremely doubtful that the two special counts of the declaration on the bill of exchange can be reconciled as consistent and proper in the same declaration. In one of these counts, it is sought to charge defendant as a member of the firm of Max Lichtenthal, agent, composed of the defendant and other persons unknown to plaintiffs, while in the other of said counts it is sought to charge the defendant as a member of the firm of Mohr & Mohr, composed of the defendant and other persons unknown to the plaintiffs. It is nowhere alleged that these firms are identical in membership. For aught we know they may be distinct partnerships, with separate and distinct liabilities, though the defendant may be a member of each. The plaintiffs, in their bill of particulars, seem to have concluded themselves on this point at the outset by admitting that there was but one bill of exchange sued on. It is evident that the defendant could not be sued in both capacities in the same action, on the same bill of exchange.

Appellees' counsel claim that in consequence of the defective verification of appellant's special plea to the two special counts in the declaration, it should be considered as an admission on his part that the signature to the bill of exchange is his. This construction would be by far too broad, even under the peculiar allegations of the declaration in the two special counts on the bill of exchange. A person's signature is his name, in his own proper handwriting, or, if he cannot write, then some mark, or symbol, or sign, adopted by him as his signature, and made or impressed on an instrument in writing, by his own hand. If he is sued on an instrument in writing, purporting to have been executed by him over his signature, but as a matter of fact was not, then his liability must be established, if at all, not upon the ground that it is his signature, but by proofs that he expressly author-

ized some agent or procurator to bind him by writing what purports
to be his signature. So, in this case, even if the appellant could be
held liable on the bill of exchange in the manner claimed in the dec-
laration, such liability must be established by competent proofs,
showing his connection therewith, instead of relying on the ground
that the signature to the bill of exchange is his, as it is evident from
the face of the bill that it does not bear his signature, within the
meaning of section 30, of the statute aforesaid. The action is not
brought against the partnership firm of Max Lichtenthal, agent, nor
that of Mohr & Mohr, but against Paul Mohr, in his individual capac-
ity as a member of each. The necessary proofs to establish appel-
lant's liability on the bill of exchange, if such liability exists, could
be given under the general issue. Appellant's special plea, there-
fore, may be treated as surplusage and immaterial.

In this connection it may be well to consider the fact that Tran-
quilino Luna, one of the appellees, who, it seems, negotiated for and
took the bill of exchange on behalf of appellees, in his testimony on
the trial, in answer to the question, "For what consideration was this
draft in question given?" said, "The consideration was some sheep I
sold him," and to the next succeeding question, "sold who?" he re-
plied, "Max Lichtenthal, as agent for Mohr & Mohr." This evi-
dence of one of the appellees should be conclusive as showing that
the signature "Max Lichtenthal, agent," cannot be considered as the
signature of the defendant within the meaning of the statute. And
all the evidence introduced, under objection, tending to show a liabil-
ity on the part of appellant as a member of the firm of "Max Lich-
tenthal, agent," was improper evidence to be considered by the jury,
and constituted error.

The lower court, in charging the jury, among others, gave the fol-
lowing instructions: "The plaintiffs sue the defendant on a certain
draft or bill of exchange dated November 25, 1876, for the sum of
$10,000, said instrument being signed, "Max Lichenthal, agent." Their
declaration or complaint contains three separate counts, besides
others that do not seem to be insisted on in the trial. If they have
proved their case to your satisfaction, under either of these counts,
they are entitled to a verdict. The first one of these counts alleges
that said draft was made by the defendant, doing business under the
firm name of Mohr & Mohr, by Max Lichtenthal, his agent. The
second alleges that the defendant and one or more others unknown
were doing business under the firm name of Max Lichtenthal, agent,
and as such made said draft. The third alleges that the defendant
and one or more others unknown were doing business under the firm
name of Mohr & Mohr, and that they made the draft."

To these instructions the defendant duly excepted. The first spe-
cial count on the bill of exchange was permitted to be read to the jury,
though objected to by defendant's counsel, and during the progress of

the trial evidence bearing upon the said count was permitted to be given to the jury, though objected to by defendant's counsel. This certainly was error under the state of the pleadings, as a demurrer had been sustained to such first count, and it no longer formed a part of the declaration. The lower court at the request of plaintiffs, though objected to on behalf of the defendant, gave also the following instructions to the jury: "If the jury believes from the evidence that the defendant and Max Lichtenthal, either alone or with any one else, were partners in the year 1876, under the name and style of 'Max Lichtenthal, agent,' and that while they were so partners Max Lichtenthal, as a member of said firm, drew the draft in question by the said firm name on the defendant, either individually or as the firm of Mohr & Mohr, they shall find a verdict for the plaintiffs," etc.      *    *    *

This instruction is so adroitly worded as to be well calculated to mislead the jury. The jury even might have apprehended from its phraseology that if Max Lichtenthal executed the draft on his own individual and private account, the defendant would be liable under the circumstances, though a strict grammatical construction would not sustain that view. The instruction is otherwise erroneous, inasmuch as the declaration contains no count covering the defendant's liability as the member of any firm of which Max Litchtenthal was also a member. Max Lichtenthal was necessarily known to plaintiffs, and as we have seen from the evidence of one of such plaintiffs, the transaction was entered into upon the representations of Lichtenthal that he was acting as the agent of Mohr & Mohr, and that the draft was taken with the understanding that the firm of Mohr & Mohr was to be looked to as the responsible party; in other words, that Mohr & Mohr drew the draft on themselves through their agent, Lichtenthal, in favor of appellees. The representations of Lichtenthal as to the capacity in which he was acting may have been false and fraudulent, but unless it be shown that appellant was in some way connected with the fraud, he could not be held responsible. There were several other instructions that were given and excepted to on behalf of appellant, and several that were asked to be given that were refused, and the refusal excepted to on his behalf. It may be that other errors would be discovered upon a further examination of the record in reference to such instructions, but enough has been disclosed already to justify a reversal.

There is another question presented by the record that overshadows all the others in importance, since upon its determination rests the determination of the further question whether there should be a new trial granted or a final judgment rendered by this court in favor of the appellant. This relates to the peculiar character of this bill of exchange; neither the name of the appellant nor of the firm of Mohr & Mohr, of which he is a member, appearing on the face thereof as drawer. The question presented is whether any party through parol testimony *aliunde* can be made liable as principal upon a negotiable

instrument under the circumstances presented in this case, whose name is not disclosed thereon. This question has been argued by counsel on either side with signal ability, indicating careful and extensive research. It is one of those questions about which there is a great deal of apparent conflict in judicial opinions. Upon this point, in support of the proposition that a party may be charged as principal though his name is not disclosed on the negotiable instrument, we are referred by appellees' counsel as authority to the case of *Mechanics' Bank of Alexandria* v. *Bank of Columbia*, 5 Wheat. 326, and to the case of *Baldwin* v. *Bank of Newbury*, 1 Wall. 234. Any decision, unreversed, of the supreme court of the United States covering the case before a territorial court, would be necessarily conclusive on such court, irrespective of the weight of authority of the various state courts. In the first of these cases (5 Wheat. 326) an action of *assumpsit* was brought upon a bank-check made and issued in the ordinary course of business as a bank transaction; but the check was in the following form, taken from the printed check-book in common use by the bank, viz.:

| Mechanics' Bank of Alexandria. | (No. 18.)  MECHANICS' BANK OF ALEXANDRIA, June 25, 1817. *Cashier of the Bank of Columbia:* Pay to the order of P. H. Minor, Esq., ten thousand dollars. $10,000.  WILLIAM PATTON, JR. |
|---|---|

William Patton, Jr., who signed this check, was the cashier of the Mechanics' Bank of Alexandria, and Minor, the payee named in the check, was the teller. The check was offered in evidence, but objected to on the ground that it could not be used in evidence against said Mechanics' Bank because it did not appear therefrom that it was the check of said bank, and because no parol or other testimony could be received to explain its character; but the objection was overruled, and other evidence showing it to be a bank transaction, and so regarded by the parties, was received, together with the check. On writ of error, the United States supreme court affirmed the judgment, but it was on the ground mainly that the corporate name of the bank appeared on the face of the check, leading to the belief that it was a corporate and not an individual transaction, to which consideration were added the circumstances that the cashier was the drawer, and the teller, the payee; that the evidence on the face of the bill predominated in favor of its being a bank transaction. Under these circumstances it was held, in effect, that in this class of cases, whatever there was of patent ambiguity on the face of the check, might be explained by parol testimony. On this point the court said: "Had the draft signed by Patton borne no marks of an official character, the case would have presented more difficulty; but if marks of official character not only exist on the face, but predominate, the case is re-

ally a very familiar one.   Evidence to fix its true character becomes indispensable."

In the other of said cases (1 Wall. 234) is a somewhat stronger case in support of appellees' position.   It was an action of *assumpsit* brought upon a promissory note, a copy of which is as follows:

"$3,500.                                    BOSTON, December 9, 1853.
"Five months after date I promise to pay to the order of O. C. Hale, Esq., cashier, thirty-five hundred dollars, payable at either bank in Boston, value received.                    J. W. BALDWIN."

The suit was brought by the Bank of Newbury, a corporation of Vermont, against Baldwin, the signer of the note.   The action was brought in Massachusetts, where Baldwin resided, and where the note was made and payable.   In the mean time Baldwin had obtained a discharge from his debts under the then bankrupt laws of his state. He pleaded this discharge in bar of the action on the note.   He also pleaded the general issue, and under this plea the objection was raised on his behalf that the note declared on was not competent evidence to support the declaration in that it appeared on the face of the note that Hale, in his individual capacity, was the payee, and not the bank of Newbury, the plaintiff corporation.   And upon this point there was the following agreed statement of facts by the parties, viz.: "It is agreed that O. C. Hale was *in fact the cashier of the Bank of Newbury* at the time of the making said note; and in case the court. would admit such evidence, after objection by the defendant, and not otherwise, and not waiving his objection to the same as incompetent, the defendant admits that said Hale mentioned in said note, in taking said note, was acting as the cashier of and agent for the plaintiff corporation.   If, upon the foregoing facts, the plaintiff has made out a legal cause of action in his favor, and the defendant's discharge, etc., is ineffectual as a bar of said action, the defendant is to be defaulted, otherwise the plaintiff is to become nonsuit."

One of the points raised and decided in this case was practically the same as that raised in the first of the foregoing cases, (5 Wheat. 326,) and was decided in the same way.   On this point the court said: "Promise, as appears by the terms of the note, was to O. C. Hale, *cashier*, and the question is whether parol evidence is admissible to show that he was cashier of the plaintiff bank, and that in taking the note he acted as the cashier and agent of the corporation.   Contract of the parties shows that he was cashier, and that the promise was to him in that character.   Banking corporations necessarily act by some agent, and it is a matter of common knowledge that such institutions usually have an officer known as their cashier.   In general he is the officer who superintends the books and transactions of the bank under the orders of the directors.   His acts within the sphere of his duty are in behalf of the bank, and to that extent he is the

agent of the corporation. *Viewed in the light of these well-known facts,* it is clear that evidence may be received to show that a note given to the cashier of a bank was intended as a promise to the corporation, and that such evidence has no tendency whatever to contradict the terms of the instrument."

There is some general language used in each of these decisions that has been construed by appellees' counsel as deciding that in all cases of negotiable instruments between private parties, any person whose name does not appear thereon may be made liable as maker or drawer by parol testimony. But they are not so comprehensive as that. They rest upon grounds peculiar to banking institutions and their officers, their purport being that if a bill of exchange, check, or promissory note is made by or to a *cashier,* in contemplation of law, the strong presumption arises that it is a bank transaction, and if that is the fact, whatever uncertainty there may be can be cleared up by parol testimony. This is as far as they go. It is within the knowledge of every business man that in the multitude of daily transactions of banking institutions, they have fallen into the habit of a very summary mode of executing checks, bills, and notes, and when the word "cashier" is attached to a name without anything else to indicate the official character of the instrument, it is commonly understood to relate to a bank transaction. In this class of cases the rule of law on the point now under consideration seems to be quite well settled.

In a very late case, decided in May, 1882, the supreme court of Illinois, in the case of *Scanlan* v. *Keith,* 102 Ill. 634, very clearly makes this distinction. The language of the court is as follows: "Whatever may be the decisions elsewhere, the authorities of this state are full to the point that a party will not be permitted to show by oral testimony that his written agreement understandingly entered into was not, in fact, to be binding upon him; accordingly it was held, in *Hypes* v. *Griffin,* 89 Ill. 134, mainly on the authority of *Powers* v. *Briggs,* 79 Ill. 493, that where trustees of a church corporation made a note in their individual names, although they described themselves as trustees of the church, parol evidence was inadmissible to show it was the intention of the parties it was to be the note of the church corporation, and not the note of the trustees executing it. The principle, running through that and other cases in this court, is that such instruments will be construed as the parties made them, without the aid of extrinsic evidence. That rule would seem to be as well settled in this state as any rule can be. But there is another principle declared in *Hypes* v. *Griffin, supra,* that has more immediate application to the case in hand. It is that where a party signs his name as cashier or agent of a banking, railroad, or other corporation, in drawing drafts and bills, or in accepting drafts or other evidences of indebtedness in its ordinary business, if it appears or is made to appear it is the obliga-

tion of the corporation, and the cashier or agent or other officer had authority to bind the corporation, he is not personally liable, and the facts may be shown by extrinsic evidence. Most generally there is that on the face of the instrument itself, and especially when the execution is witnessed by the seal of the corporation attached thereto, that indicates unmistakably it is the obligation of the corporation. It is seldom any one takes such paper under the belief it is the obligation of the officers executing it on behalf of the corporation. But parol testimony is admissible to establish the facts, collateral though they sometimes may be, that will make it appear past all doubt whose obligation it is."

This decision, with the distinctions therein made, is in perfect accord with the decisions of the United States supreme court above referred to. In the case of *Bank of New York* v. *Bank of Ohio*, 29 N. Y. 619, it was expressly decided that a "bill drawn to D. C. Converse, *cashier*, is, in judgment of law, payable to the bank of which he is the officer." There is another class of adjudications, notably the modern decisions of the court of appeals of the state of New York, on the subject, which put it upon much broader grounds, apparently, by applying the same principles to bills and notes between private individuals as are applied to the same kind of negotiable instruments made by or to cashiers of banks in the ordinary business of such institutions. The case of *Moore* v. *McClure*, 8 Hun, 557, decided October, 1876, by that court, is to that effect, and is much relied on by the appellees. This was an appeal from the order of the lower court, sustaining a demurrer to a count of the complaint. The count demurred to was as follows: "And for a second and further cause of action, the plaintiff alleges that on the seventh day of January, 1874, the said defendant, by J. S. McClure, her said agent, made and delivered to this plaintiff her promissory note, in writing, of which the following is a copy:

" 'CANANDAIGUA, January 7, 1874.

" 'Twenty days after date I promise to pay to the order of C. T. Moore, sixty-one and sixty-two one-hundredths dollars at Williams & Remington's Bank. Value received, with use and exchange on New York.                    JOHN S. McCLURE, Agent.'

" "That said note was given by said McClure to plaintiff for and as the agent of said defendant, and that said note was given by said defendant, by her said agent, for and on account of goods, wares, and merchandise theretofore sold and delivered by said plaintiff to said defendant." In rendering the decision the appellate court used the following language: "The demurrer was sustained on the ground that the note does not refer to the defendant by name, and the court does not show that J. S. McClure had authority, as the agent of the defendant, to make the note, or that it was made in the business of his agency. We think the count is sufficient; it avers that the defend-

ant by her agent, in consideration of goods, etc., sold and delivered to her, made her note. * * * The fact that the name of the principal does not appear on the face of the note, under the modern decisions of this state, is not at all conclusive. * * * The order sustaining the demurrer is reversed."

The case of *Coleman* v. *Nat. Bank of Elmira,* 53 N. Y. (Court of Appeals, 8 Sick.) 388, is to the same effect, though the action was upon a bank deposit. These New York decisions are in conflict with the great preponderance in the weight of authority on the subject. And when we consider the Code practice of that state, wherein the original transaction constituting the consideration of the note is set out in the same count in the complaint, in which is also set out the note, it is not at all surprising that, upon the whole statement of facts taken together, it should be held that the count contained a cause of action, since all the authorities agree that all the parties, although a party may not be held liable on a bill or note unless his name appears thereon, yet, if it be true that his connection with the original transaction and consideration out of which the negotiable bill or note arose was such as to render him liable, may be sued on such original consideration. 1 Pars. Notes & Bills, 92, 95; 1 Daniel, Neg. Inst. (2d Ed.) § 305, p. 251.

In case an action is brought on such original consideration, parol testimony may of course be received showing such liability. The distinction being that, according to the "law merchant," bills and notes must be in writing, and cannot be varied by parol; such a thing as a parol bill of exchange is unknown to the law. This distinction is by no means an idle thing, since there can be no doubt that it is of the greatest advantage in commercial transactions to have all the terms, conditions, and parties to such paper expressed with certainty in writing. No case could be invented that would better illustrate the soundness and reasonableness of this principle than the difficulties and uncertainties attending the very case we are now considering. Surely, the liability as principal on any negotiable instrument in writing should rest on some more certain foundation than the weak, conflicting, and unsatisfactory parol testimony disclosed in the record in this case. This view is not only supported by the preponderance of judicial authority, but is sustained in the text of every law-writer on the subject.

In the very late and valuable work of Daniel, Neg. Inst. in vol. 1, (2d Ed.) § 300, that author says: "It is a general principle of commercial law that a negotiable instrument must wear no mask, but must reveal its character on its face; and it extends to the liability of parties thereto, who must appear as distinctly as the terms of the instrument itself in order to be bound by those terms." Again, in section 301, he says: "If a bill be payable to A. B., describing him as agent, it is generally considered mere *descriptio personæ,* and if he

should indorse it in like manner, we should say he was personally liable; and we can see no difference between such a case and those in which it is held, that where the maker of a negotiable note adds the word 'agent,' he and he alone is bound; the terms being regarded as descriptive only." Again, in section 303, he says: "* * * No party can be charged as principal upon a negotiable instrument unless his name is therein disclosed. The reason of· this rule is that each party who takes a negotiable instrument makes his contracts with the parties who appear on its face to be bound for its payment; it is 'a courier without luggage,' whose countenance is its passport; and in suits upon negotiable instruments, no evidence is admissible to charge any person as a principal party thereto, unless his name is in some way disclosed upon the instrument." In section 305, he further says: "If the agent sign a note with his own name and discloses no principal, he is personally bound. The party so signing must have intended to bind somebody upon the instrument, and no promisor but himself thereon appearing, it must be construed as his note or as a nullity, and though he term himself agent, such suffix to his name will be regarded as mere *descriptio personæ*, or as an earmark of the transaction, and may be rejected as surplusage. And this principle applies, although it could be proven that the payee knew of the agency when the note was made, and it was understood that the principal and not the agent should be bound, for such evidence would vary the terms of the note."

The very latest decision on the subject that has come to our knowledge is that of the *Ohio Nat. Bank* v. *Cook*, decided by the supreme court of Ohio in January, 1883, and reported in the Review, January 11, 1883, under the head of "Commercial Law." The action was upon three drafts signed by "Cook" as treasurer, and made to his own order as "treasurer," the corporation of which Cook was treasurer, being the defendant. The plaintiff in the lower court obtained judgment, but the supreme court reversed it. Judge WHITE, in the opinion, said: "The name of the corporation of which Cook is the treasurer, and which he declares is his principal, nowhere appears on the face of the bill as a party to it, and parol evidence is not admissible to add a party to the instrument when there is no notice on its face. Whoever takes negotiable paper, enters into a contract with the parties who appear on the face of the instrument, and no other person can be looked to for payment. The addition of treasurer to Cook's name does not relieve him of personal responsibility; that is merely *descriptio personæ*." There can be no doubt that this view is in accord with the general current and weight of authority on the subject. In our opinion no valid reason can be assigned for doing violence to this long established and wholesome rule of law, since, as we have seen, there need be no failure of justice in rejecting a bill as that of an undisclosed principal, so long as an action may be maintained

against him on the original transaction and consideration, unattended with any of the difficulties as to parol testimony that surround negotiable paper.

In each of the New York cases referred to, the real issue practically, was upon the original consideration on which parol testimony was admitted. In one of these cases (*Coleman* v. *First Nat. Bank of Elmira*), Judge ANDREWS, in delivering the opinion, said: "The real issue on the trial was whether the bank or Van Campen was the depositary." This issue related exclusively to the original consideration for which the certificate of deposit sued on in connection therewith was given. These cases apparently were disposed of without much thought or deliberation. In either case the complaint, under the Code, no doubt contained a cause of action setting out, as it did in the same count, the original consideration in connection with the note. There was therefore no occasion for considering the terms of the note as having been varied by parol, as judgment might have been rendered on the allegation and proof of defendant's connection with and liability on the original transaction and consideration for which the note was given. With us such a complaint would not be considered good pleading, but under our common-law pleadings and practice the same result may be attained in another way by setting out the original consideration under the common counts. This was done in this very case, and testimony was received on the trial that might have been properly applied to the common count covering the original transaction in regard to the sale and delivery of sheep, but the court below at the outset, in charging the jury, took from their consideration the common counts and submitted to them only the special counts on the bill of exchange, and no objection was raised by either party. In proceeding upon the common counts covering the original consideration, the bill of exchange, no doubt, in some way should be brought into the case and not be left outstanding; and while it could not be received in evidence for the purpose of charging an undisclosed principal thereon, it might, for some purposes, be received as explanatory of the original transaction, and that the judgment might become a bar to any future action thereon. We hold that the appellant cannot be held liable on the bill of exchange as drawer, his name not appearing thereon as such, and that the only remedy of the plaintiffs is to proceed on the original consideration.

A new trial is ordered.

(All concur.)

### NOTE.

NEGOTIABLE INSTRUMENTS—PROCURATION—INSTRUMENTS SIGNED BY "AGENT"—PAROL TESTIMONY. The decisions are scarcely reconcilable in respect to the admissibility of parol testimony to show the true parties to a negotiable instrument when their names do not appear on the paper itself. It has been held that the real owner of a note made to another, described as "agent," can maintain an action in his own name, and show by parol testimony that he is the principal. Guano Co. v. Holleman, 12 Fed. Rep. 61. In *Vermont*, it is settled that where negotiable paper is made or indorsed to a payee with the addition of the word "agent," "cashier," or "treasurer" to the name, an action may be maintained in the name of the real principal, whose interest may be shown by

parol testimony. Bank v. Burton, 3 Atl. Rep. 756; Railway Co. v. Cole, 24 Vt. 33. In *Utah*, it has been determined that a note made to the financial agent or "commercial director" of a mining company in which the payee was described as "M., Com. Dir.," could be recovered on by the company even though it was shown that the maker thought that it was a personal transaction between himself and the agent, and intended to become liable to the agent alone. Société des Mines, etc., v. Mackintosh, 18 Pac. Rep. 363. The circumstances of this case are somewhat peculiar, and there is a dissenting opinion, so that it is of doubtful authority. The dissent, however, does not proceed on the theory that parol testimony is inadmissible to show the true parties to the contract, but is placed distinctly on the ground that in this case it was insufficient after being admitted to show a liability on the part of the maker to the company. It was shown that, though the maker did not intend the note to be negotiated, and gave it as an accommodation to the payee, yet he knew that the payee intended to use it as representing assets belonging to his principal; and though the maker did not intend to perpetrate a fraud upon the payee's principal, yet he was cognizant of the fact that his note was to be used for the purpose of representing an asset not really existing. The agent absconded with funds of the company to the amount of the note. This element of fraud renders the case of less value as an adjudication on the simple point of the admissibility of parol evidence. In *Nebraska*, the courts hold that an undisclosed principal cannot be made liable on a negotiable instrument by parol evidence. Webster v. Wray, 27 N. W. Rep. 644. But in *Georgia*, the original payee can maintain an action against the principal on a note signed, "A. B., Agt." Merchants' Bank v. Central Bank, 1 Ga. 418; Lockwood v. Coley, 22 Fed. Rep. 192. The weight of authority seems to be against this proposition, and the last case above cited rests upon the authority of a previous case (Merchants' Bank v. Central Bank, supra) decided in the same state.

As to notes made or intended to be made by corporations, and signed by their agents, the cases conflict in respect to the admissibility of parol testimony for the purpose of relieving or charging the agents as individuals. In *Wisconsin*, it is held that a note reading "We promise to pay," and signed, "San Pedro Mining and Milling Company. F. Kraus, President," shows no ambiguity on its face, and is the note of the company alone, and that parol evidence is inadmissible to show that the president signed in his individual capacity. Liebscher v. Kraus, 43 N. W. Rep. 166. In *Iowa*, on the other hand, it has been decided that a note reading, "We promise to pay," and signed, "Belle Plaine Canning Co. H. Wessel, Sec'y. A. J. Hartman, President," is the note of all the signers, and that parol evidence is inadmissible to show that the president and secretary signed only in their official capacities. McCandless v. Canning Co., 42 N. W. Rep. 635. In *Massachusetts*, a note beginning, "We promise to pay," and signed, "John Roach, Treasurer," with the corporate seal, on which the name of the corporation was inscribed, impressed over the signature, has been determined to be the note of the corporation alone, without the aid of any extrinsic testimony. In *California*, it has been decided, in an action by the payee on a note reading, "We promise to pay," and signed, "Pioneer Mining Company. John E. Mason, Sup't," that parol evidence is admissible to show that the entire consideration went to the company, and that the superintendent did not intend to bind himself, nor did the payee then intend to bind him. It is intimated, however, that the rule would be different if the action were brought by a subsequent holder without notice of the character of the transaction. Bean v. Mining Co., 6 Pac. Rep. 86.