# WHEELING.

## LAMB v. CECIL.

Submitted September 20, 1883.—Decided December 6, 1884.

1. While it is error to give interest upon the aggregate of principal and interest from a time anterior to the decree, yet if the difference in amount is less than $100.00, and that is the only error appearing by the record, the decree will be reversed with costs to the appellee, and a decree will be entered for the proper amount. (p. 292.)

2. Where the management of the affairs of a banking corporation is entrusted by its charter to a board of directors, unless specially authorized by the charter, the cashier of such banking corporation has no power to assign the discounted bills and notes to a depositor in payment of his deposits without authority from the board of directors. (p. 294.)

3. A plaintiff in a suit in chancery can only obtain relief upon the case made in his bill, and not on a substantially different case made by the proof. But, where the case made by the proof shows a right to relief and is not so different from the case made in the bill, that under the rules of chancery pleading it could not be amended, the plaintiff will be allowed to amend his bill, to conform to the true state of the case. (p. 295.)

4. An insolvent corporation has the right to assign all its property for the benefit of its creditors generally. (p. 296.)

5. Where a deed of assignment is made for the benefit of creditors by a corporation, a copy of said deed from the records of deeds of the county may be exhibited with the bill by the trustee with the same effect, as if he had filed the original. (p. 296.)

6. Where a deed of assignment from a corporation has affixed to it the common seal of the corporation, and the signature of the proper officer is proved, courts are to presume, that the officer did not exceed his authority, and the seal itself is *prima facie* evidence, that it was affixed by proper authority. The contrary must be shown by the objecting party. (p. 296.)

7. Whatever claims the bank could collect by suit or action before an assignment may be so collected afterwards by the trustee in the deed of assignment. (p. 297.)

8. When a director of an insolvent banking corporation by fraud and collusion with the cashier of such institution receives from

the cashier for his deposits, without the authority of the board of directors, discounted bills and notes, the property of said corporation, and suit is not brought therefor until nearly five years after such transaction, the doctrine of *laches* does not apply. (p 297.)

9. If before suit brought by the trustee in the deed of assignment from an insolvent banking corporation to recover the amount of discounted bills and notes fraudulently received from the cashier without authority by a director of such insolvent banking institution the said trustee had paid such director dividends on the indebtedness of such institution to him, this fact does not work an estoppel to maintain such suit. (p. 297.)

Statement of the case by JOHNSON, PRESIDENT:

Daniel Lamb on February 13, 1876, instituted his suit and at March rules, 1876, filed his bill in equity in the circuit court of Ohio county against A. J. Cecil, in which he alleged, that on February 25, 1871, the Wheeling Savings Institution by order of its board of directors, made a general assignment of its property to him as its trustee for the benefit of its creditors ; and with his bill he exhibits the copy of said deed of assignment from the records of said county, where it was promptly recorded. He alleges in said bill the incorporation of the company and the duties required by the charter of the directors of said company ; that defendant, Cecil, was one of the directors, who with three other directors appointed one A. C. Quarrier the treasurer of said institution ; and that by the negligence of said directors the said treasurer was permitted to, and he did, embezzle large sums of the money &c., of said corporation, which rendered said savings institution utterly insolvent.

He alleges that said directors were trustees for said incorporation and its funds and property, and that it was their duty to preserve and protect the same ; that said Cecil one of the directors of said institution had deposited in said institution the sum of $7,282.74 in his own name and as trustee for some other person, which money was deposited there to draw interest and did draw interest at the rate of six *per cent. per annum*, and had been for a long time so deposited ; that said Cecil before and on February 25, 1871, as such director, well knowing the insolvent condition of said institution combined with A. J. Pannel and Alexander Laughlin, two of the other

directors, and the said treasurer, A. C. Quarrier, to draw out of the said institution the whole of the said sum of $7,282.74 so standing in his name, and thus by means of his previous knowledge of the condition of the affairs of the said institution, obtained by being such director, he preferred himself to the full amount of his claims, whereas in point of fact the said instution after the withdrawal of his said funds will not be able to pay over fifteen per cent. of its debts to the other depositors.

He charges that the withdrawal of the said deposits under the circumstances was a gross fraud on the other depositors and creditors of the said institution; that there had been deposited in said institution over $300,000, which ought to have been forthcoming on the said 25th day of February, 1871; that the said Cecil as such director possessed the information of the insolvency of the said institution and concealed from the depositors such information, and in contemplation of the insolvency of the same withdrew his disposits and converted the same to his own use, when he ought to have let the same lie in the institution and be subject to the disposal of the said trustee, to be distributed to and amongst all of the creditors of the institution as by the said deed of assignment he is directed to do, and it is a fraud on the other depositors in the said institution to thus secretly withdraw the funds aforesaid and convert them to his own use, or for the use of any other person. He prays for a personal decree against the defendant for the amount with its interest so drawn out of said institution.

The defendant demurred to the bill, which demurrer was overruled. He then answered the bill denying all negligence, and averring that he had discharged his duty as director of said institution. He insisted that by the express terms of the charter of said institution no director was or is liable in his person or property for any debts, contracts or engagements of said corporation, but that the money, property, rights and credits of said corporation and nothing more were and are liable for the same. He admits that the treasurer, A. C. Quarrier, abstracted and embezzled the most of the funds of said corporation, but insists that he did so by figures and false entries, which would not have been detected by the most

careful examination, and that he did so without any aid, sufferance, default or negligence of said directors or of respondent. He sets up as fact, that all the moneys to his credit in said institution were trust-funds, and denies that he had any notice of the insolvency of the institution. He avers that he had determined some time before to draw out $2,500.00 in order to otherwise invest for his *cestuis que trust*; and that at the time he drew the check he believed the institution to be only temporarily embarrassed. He denies that a deed of assignment in the terms stated in the bill was made on February 25, 1871, or that any assignment was ever made by the said institution to complainant. He denies that the claim sued for did or could pass by the deed of assignment alleged in the bill, if said institution had such claim. He insists that, even if he had had the knowledge charged in the bill, it was not his duty to permit trust-funds, of which he was the custodian, to lie in the institution to be distributed among the creditors; and that he would have been derelict in his duty toward his said *cestuis que trust* if he had done so. He denies that he has been requested to return the funds to complainant and avers that on the contrary respondent individually and as trustee presented to said complainant, trustee, respondent's claims by reason of moneys still due to him from said institution, when with a knowledge of all the facts attending the withdrawal of said funds the complainant made no claim but acknowledged defendant's claims, certified them to be correct, and paid dividends *pro rata* with other admitted claims against said institution. He alleges that he has paid to his *cestuis que trust* all the funds drawn out of said bank as aforesaid. He avers that, if complainant ever had a cause of action, he has lost it by his *laches*; and he further relies on the bar of the statute of limitations.

The plaintiff tendered an amended bill, setting up negligence and fraud more particularly against the directors generally and against Cecil particularly, to the filing of which the defendant objected, and the court refused to permit the same to be filled. This bill charged that by reason of the fraud and negligence of the directors of said institution the bank lost $300,000.00, and prayed that damages to that amount might be decreed against them. It also charged

that under the circumstances stated in the bill the said Cecil had no right to withdraw his deposits, and prayed that he might be required to pay to the plaintiff the amount of said deposits so withdrawn. No directors except Cecil were made defendants.

Depositions were taken and on the hearing, on May 31, 1883, the court decreed for the full amount of the deposit so withdrawn and interest to April 23, 1883, and interest on this sum until paid, less credits that he was entitled to thereon.

From this decree Cecil appealed.

*W. P. Hubbard* for appellant.

*Caldwell & Caldwell* for appellee.

JOHNSON, PRESIDENT:

If the amended bill were intended to charge the directors for the amount of the damage suffered by the bank by reason of their fraud or negligence in the management of the affairs of the bank, then all of the directors should have been made defendants, but if it is to be regarded as a bill to compel Cecil to pay the amount of his deposits improperly withdrawn from the bank, then the bill is multifarious. The court did not err in refusing to permit said bill to be filed.

It was error to decree interest on the aggregate of principal and interest from a time anterior to the rendition of the decree. (*Fowler* v. *Baltimore and Ohio Railroad Company*, 17 W. Va.) While this error would require the decree to be corrected, yet, as the difference is not sufficient to give this Court jurisdiction, it would, if there were no other error, be reversed with costs to the appellee, and a decree entered for the correct amount. (*Bee* v. *Burdett*, 22 W. Va.) The depositions show, that A. J. Cecil was a director of the savings institution that before he drew his checks for his deposits, he had with A. J. Pannel and Alexander Laughlin, two others of the directors, as a committee examined into the affairs of the savings institution and found it was hopelessly insolvent. We are justified from the pleadings and evidence in saying, that it was this knowledge of the insolvency of the institution which made him draw his two checks, one in his

individual name for $3,915.81 and the other as "trustee" for $3,366.93. These two checks were presented on Thursday, February 23, 1871; and the institution was closed on Saturday, February 25, 1871. How were they paid? Were they paid in the ordinary course of banking business in currency? They were not paid in money but in discounted bills and notes, the property of the bank. Mr. Paull in his deposition, who gives a very clear and detailed statement of the whole transaction, says, in answer to questions as follows: "Q.—State whether A. J. Pannell and A. J. Cecil * * drew their money out of the bank before its failure and about what time? Give dates and amounts. A.—They drew their money out before the failure. The date I can only tell from the books. I don't recollect it now. It was on Thursday, February 23, 1871, A. J. Pannell drew $7,841.50, A. J. Cecil $2,915.81. Q.—Where do you find these entries? A.— In the cash book; in the book marked "Blotter—Wheeling Savings Institution," page 38. When I say they drew their money out, I mean they drew its equivalent. Q.–In what shape? A.—They were bills that had been discounted by the institution, and were owned by the institution, notes and bills. Q.—State whether A. J. Cecil, trustee, drew any? A.—A. J. Cecil, trustee, drew $3,366.93. Q.—Where is that entry from? A.—On the same page 38 of the blotter. Q.—Who made these last three entries, and when? A.—I did, and on that date; but I did not pay the checks. Q.—Who did? A.—A. C. Quarrier. Q.—In what shape was the money paid to A. J. Cecil, trustee? A.—Bills and notes, which had been discounted by the bank and owned by the bank."

Did this give a cause of action by the bank to receive back the amount of such notes thus taken by the said Cecil? The answer to this question must depend upon whether the treasurer A. C. Quarrier, who was acting as the cashier of the bank, had any authority to dispose of the discounted bills and notes, the property of the bank. It is not pretended, that he had any such authority from the board of directors. The whole record is against any such presumption as this. Did he then *virtute officii* have the right to dispose of the discounted bills and notes of the bank? There is nothing in the charter of the institution conferring that

right upon him. The management is there conferred upon a board of directors. The court of appeals of New York in *Hoyt* v. *Thompson*, 1 Seld. 320 held, that where the management of the affairs of a corporation is entrusted by its charter to a board of directors, the president and cashier, unless specially authorized by the charter, have no power to assign the choses in action of the corporation to its creditors as security for the payment of a precedent debt of the corporation without authority from the board of directors. An assignment so made is not merely voidable but is absolutely void. Ruggles, C. J., in delivering the opinion of the court, said:

"But the power and duties of the president and cashier are not prescribed by the charter; no power is confered upon them to mortgage, assign, or dispose of the property of the corporation. This is a part of the management of the business of the company, which is confided expressly to the directors, but not to the president and cashier. In no case has it been held that these officers are authorized to do an act like that in question without the assent and authority of the directors."

To the same effect is *Spear* v. *Ladd*, 11 Mass. 94, and *Bank* v. *Pepoon*, 11 Mass. 288. Indeed in the first of those cases it was gravely considered, whether the board of directors could confer such powers on the president and cashier, and in the second, whether they could confer it on any attorney. In the last named case, Parker C. J. p. 292, said: "This power puts the whole property of the bank under the control of the directors, and without doubt the power may be abused. But the stockholders should provide against this evil in the choice of directors. Having this power there is no reason why it should not be exercised by one of the body with the consent of the rest expressed by their vote. We are satisfied therefore, that the directors might by their vote or power of attorney authorize the president or any other officer of the bank to assign over the promisory notes payable to the company."

In *Fletcher* v. *U. S. Bank*, 8 Wheat. 338, it was held, that the authority of the cashier to assign a note of the bank need not be under the corporate seal, but that a resolution passed by the directors was sufficient authority for the cashier.

I can find no authority, which holds that the cashier with-

out the authority from the directors can dispose of the discounted bills and notes of the bank. It would be a dangerous power indeed to repose in an officer of the bank. It would put a large part of the property of the bank under the absolute control of the cashier or other officer exercising such power; and he might for his own use dispose of such property and pass good title thereto.

It will be seen, that a good case is made by the proof, one that gave the institution a right to recover the full amount of such notes so improperly disposed of. It is also a different case entirely from that set out in the bill. The case made, or attempted to be made, in the bill is beset with difficulty. It raises the question, whether a director is a trustee for the creditors as well as the stockholders of the bank, and whether such director having by virtue of his being a director knowledge of the insolvency of the bank may withdraw his deposits from the insolvent bank in currency and in the regular course of business, or must he leave his deposit there for the purpose of paying the creditors? That is not this case. The case proved is free from all these difficulties and shows clearly, that the director had no right to take from the cashier, and the cashier without the authority of the board of directors had no right to give him in payment of his deposits, either of himself or of those for whom he was trustee, the discounted bills and notes of the bank. The cashier certainly occupies a position of trust, and it was a fraud upon the bank and the stockholders of the bank for him to give to Cecil those bills and notes, a fraud, in which said Cecil participated; and he got no title whatever to the same by taking them from the cashier with or without his endorsement; and he is liable to the bank or its assignees for the full amount of such notes so taken and interest thereon.

I deem it unnecessary to decide whether the bill filed stated a proper case for relief or not, as it is not the case proved. The case proved entitles the plaintiff to recover, but he must amend his bill. As the property taken from the bank is the thing the original bill sought to have repaid, but stated it to be money when it was not money, but other property improperly and fraudulently taken from the bank, the bill can be amended in accordance with the facts; and A. C.

Quarrier should be made a defendant. Of course it must be understood that I am only speaking of the case as proved; when the cause is reheard a different case may be made.

But it is claimed, that the corporation had no power to assign all its effects and thus defeat the purpose, for which it was created. An insolvent corporation has the right to assign all its property for the benefit of its creditors generally. (*Sargent* v. *Webster*, 13 Metc. 503; *Dana* v. *United States Bank*, 5 W. & S. 223.)

It would be strange if this were not true. After a corporation has become insolvent, being unable to proceed with its business, the only proper thing to be done is to dispose of its property to those entitled to receive it; and the best and fairest way to do this is to assign its property to a trustee for the benefit of its creditors. But it is further objected that in this case no assignment was made; that there is no evidence, that the deed, a copy of which is exhibited with the bill, was executed by the president of the corporation, or that he was authorized to execute such deed by the board of directors. It is true that the original deed was not filed as an exhibit, but a properly authenticated copy from the record is filed. That was sufficient and answered all the purposes of the original. (Code W. Va. 615; *Pollard's heirs* v. *Lively*, 4 Grat. 73; *Ott* v. *McHenry*, 2 W. Va. 73.)

This deed purports to have the common seal of the corporation. When the common seal of the corporation appears to be affixed to an instrument, and the signature of the proper officers are proved, courts are to presume, that the officers did not exceed their authority; and the seal itself is *prima facie* evidence that it was affixed by proper authority. The contrary must be shown by the objecting party. (Field on Corporations, section 224, and following cases cited: *Berks Turnpike* v. *Myers*, 6 S. & R. 12; *Leggett* v. *New Jersey Banking Company*, Sexton Ch. 541; *Burrill* v. *National Bank*, 2 Metc. 166; *Lovett* v. *Steam Saw Mill Association*, 6 Paige, 54; *Levering* v. *Memphis*, 7 Humph. 553; *Reed* v. *Bradley*, 17 Ill. 321; *Flint* v. *Clinton Company*, 12 N. H. 434; *Benedict* v. *Denton*, 1 Walker Ch. 336.) There is no evidence in the record to contradict the *prima facie* evidence of the deed itself, and we must presume it was properly executed.

But it is insisted that the claim was not assignable. We think we have clearly shown that it was. The bills and notes were a part of the property of the bank improperly taken from it; and there can be no doubt, that the bank would have had the right to sue for them, and Mr. Lamb, to whom it assigned all its property and choses in action, certainly as representing the bank had a right to bring this suit.

But it is also claimed, that by paying Cecil dividends on his claims the trustee had settled with him and was estopped from claiming that he was indebted to the institution. There is nothing in this position; for it must be remembered, that Mr. Lamb was a trustee, and Cecil would have been entitled to even greater dividends, had he paid in the money which he owed to the institution. Cecil had been guilty of a fraud in colluding with the cashier and in receiving in payment of his deposits the discounted bills and notes of the institution ; and there is no evidence that Mr. Lamb was aware of this fact until after the deposition of Mr. Paull was taken in 1879. If the statute would run at all in a case like this, it would not commence to run until after the discovery of the fraud. Of course, if the suit were brought before the discovery, and the bill could be amended as to Cecil, he would have no right to rely on the statute of limitations. Under the facts and circumstances of this case the doctrine of laches can have no application. The books of the institution, so far as they are exhibited with the record, do not show that Cecil in the payment of his deposits received the discounted bills and notes of the institution; and Mr. Lamb brought this suit, so far as the record shows, even before he discovered this important fact.

For the foregoing reasons, because the case made in the bill is variant from the case proved, and the case proved shows the plaintiff is entitled to relief, the decree of ·May, 31, 1883, is reversed with costs to the appellant, to be paid by the plaintiff out of the funds of said savings institution ; and this cause is remaded to the circuit court of Ohio county with leave to the plaintiff to amend his bill, as indicated in this opinion, and for further proceedings to be had.

REVERSED.    REMANDED.