# CHARLESTON.

## LAMB, TRUSTEE, &c. *v.* CECIL.

Submitted September 12, 1886.—Decided October 23, 1886.

1. A plaintiff can not under the pretence of an amendment of his bill introduce an original and different cause of action or ground for relief. But if the cause of action and the relief sought are substantially the same, it is immaterial that the form, in which the claim is presented by the amendment, differs essentially from that in the original bill. (p. 656.)

2. When an amended bill is rightly filed according to rule above stated, so far at least as the statute of limitations is concerned, it will have the same effect, as if it had been filed at the time the suit was commenced ; and a cause, which was not then barred, will not be treated as barred at the time of the amendment. (p. 658.)

3. The power to sell and transfer the discounted bills and notes of the bank does not belong to the ordinary powers of the cashier, but inasmuch as he may do so under some circumstances, a transfer made by him in the usual course of the business of the bank to a person, who has no cause to question the propriety or good faith of the transaction, will be *prima facie* valid. (p. 659.)

4. When a director of a bank, who is also a depositor, has knowledge that the bank is probably insolvent and will likely be unable to continue its business or pay its depositors, in order to avoid the

loss of his deposits obtains from the cashier, without authority from the board of directors, discounted bills and notes of the bank equal to the amount of his deposits, the transaction will be held invalid and the assignee of the bank may recover the amount of said bills and notes from him. (p. 661.)

5. When such depositor is entitled to dividends from the assignee of the bank, which have not been declared or paid by reason of the controversy in the suit, he will be entitled to be paid out of the fund recovered from him dividends on his deposit equal to those paid to the other depositors with interest on the same from the time the same would have been paid if there had been no controversy or suit. (p. 662.)

*W. P. Hubbard* and *H. M. Russell* for appellant.

*Caldwell & Caldwell* for appellee.

SNYDER, JUDGE :

Suit in equity brought February 23, 1876, in the circuit court of Ohio county by Daniel Lamb, trustee, against Alexander J. Cecil, to recover the amount of certain deposits withdrawn by the defendant from the Wheeling Savings Institution on February 23, 1871, and which it is claimed were unlawfully and fraudulently withdrawn and converted to the use of the defendant. This cause was before this Court on a former appeal and the decrees then appealed from were reversed and the cause remanded to the circuit court with leave to the plaintiff to amend his bill so as to make its allegations conform to the facts proved and for further proceedings. The report of the cause on the former appeal contains a full history and statement of the proceedings and facts as they then appeared, and it is therefore unnecessary to do more here than to refer to said report for the facts and proceedings. 25 W. Va. 288 to 297 inclusive.

On January 31, 1885, a few days after the mandate of this Court had been entered in the circuit court, the plaintff exhibited in that court an amended bill in which were repeated many of the allegations of the original bill, and in addition thereto the plaintiff alleged, that the defendant, Cecil, on February 23, 1871; drew and presented for payment at the Wheeling Savings Institution his two checks, one in his own name for $3,915.81, and the other as "trustee" for $3,366.95

and in payment thereof he obtained from A. C. Quarrier, the treasurer of said institution, without authority from the board of directors, not money or currency in the ordinary course of banking business, but discounted notes and bills not yet due, the property of the institution, to the amount of said checks; that before the said notes and bills were so obtained the said institution had become and was then wholly insolvent and unable to pay its debts, and that this was known to the said Cecil as a director and was the cause of his withdrawing the said deposits; that the said treasurer occupied a position of trust, and it was a fraud upon the bank for him to give said Cecil the said notes and bills, a fraud in which the said Cecil participated, and he acquired no title thereto, and is liable to the plaintiff as trustee under the assignment made to him by the bank, for the amount of said notes and bills, to-wit: $7,284.74. There are many other allegations in the bill, but the above is the material matter introduced by the amendment.

The defendant, Cecil, objected to the filing of the amended bill and also demurred to it, but the court overruled both the objection and demurrer. Subsequently the plaintiff filed a second amended bill alleging a want of knowledge of certain facts to avoid the defence of the statute of limitations. The defendant answered both bills, controverting the right of the plaintiff to maintain this suit and relying upon the statute of limitations. The cause was finally heard on February 27, 1886, and a decree then entered in favor of the plaintiff, for the amount of said bills and notes less certain dividends deducted therefrom. From this decree the defendant, Cecil, has appealed.

The appellant insists that his demurrer to the amended bill should have been sustained, because the cause of action asserted in it differs from that presented in the original bill not only in form but in substance—that it is in fact a new suit and not a continuation or amendment of the original suit.

In the opinion delivered on the former appeal this Court says: "It will be seen that a good case is made by the proof, one that gave the institution a right to recover *the full amount of such notes* so improperly disposed of. It is also a different case entirely from that set out in the bill. The

case made, or attempted to be made, in the bill is beset with difficulty, * * * * The case proved is free from all these difficulties and shows clearly that the defendant had no right to take from the cashier, and the cashier without the authority of the board of directors had no right to give him in payment of his deposits, either of himself or those for whom he was trustee, the discounted bills and notes of the bank. The cashier certainly occupies a position of trust, and it was a fraud upon the bank and its stockholders for him to give to Cecil those bills and notes, a fraud in which Cecil participated; and he got no title whatever to the same by taking them from the cashier either with or without his indorsement; he is liable to the bank or its assignee *for the full amount of such notes so taken and the interest thereon.* I deem it, (therefore,) unnecessary to decide whether the bill filed stated a proper case for relief or not, as it is not the case proved. *The case proved entitles the plaintiff to recover,* but he must amend his bill. As the property taken from the bank is the thing the original bill sought to have repaid, but stated it to be money when it was not money, but other property improperly and fraudulently taken from the bank. *the bill can be amended* in accordance *with the facts.*" 25 W. Va. 295. The cause was then remanded " with leave to the plaintiff to amend his bill as indicated in this opinion, and for further proceedings to be had"—25 W. Va. 297.

This, it would seem, was a positive and direct adjudication of the right of the plaintiff to amend his bill, and his amendment is substantially if not in terms just what was indicated by this Court. The question, therefore, whether or not such an amendment was proper or improper in this cause, it seems to me, is *res judicata* as to the appellant here and beyond the control of this Court. But as we are earnestly asked by counsel to reconsider that question, I will briefly state my views in regard thereto. It is certainly well settled, that a plaintiff can not, under the rule allowing amendments, abandon his original cause and substitute therefor one which is essentially different. He can not under the pretence of amendment introduce an original and different cause of action. The amendment must relate to the same identical cause, and demand substantially the same relief. But if these

are the same it is not required that the form in which the claim is stated or the relief demanded shall be the same. One of the very purposes of the rule and practice allowing amendments is to relieve against informal and defective averments of the plaintiff's cause of action. Whenever the bill states facts from which the court can determine that the plaintiff has a cause which, if properly pleaded, would entitle him to relief, although the bill may not formally allege facts that entitle him to any relief, the plaintiff will be entitled to amend his bill so as to obtain the relief which his bill shows he would be entitled to if properly pleaded. But in all cases the cause of action must be *in substance* the same both in the original and amended bills, otherwise the amendment will be held to be a departure in pleading, treated as a new suit and therefore disallowed, or if allowed be subject to all the incidents and disadvantages of an original bill. *Piercy* v. *Beckett*, 15 W. Va. 444; *The Mercantile Insurance Company* v. *Verplauck*, 1 Edw. ch. 46; *Doonan* v. *Glynn*, 26 W. Va. 225. The general rule thus announced has been professedly followed in Virginia and this State, but in some instances here and especially in the English courts this rule has been departed from so far that it is scarcely possible to give any very accurate idea of the scope of amended bills. See 1 Bart. Ch'y Pr. 324.

In the case at bar the original bill sought to recover $7,-282.74, the amount of money or currency improperly obtained by the defendant from the bank upon two checks drawn by him for that amount. It did not seek to recover the identical money so improperly obtained, but simply an amount of money equal to that so obtained. The amendment seeks to recover the sum of $7,282.74, the full value and amount of certain notes and bills improperly obtained by the defendant from the bank upon two checks drawn by him for that amount. There is no question raised either in the pleadings or the proofs as to the actual value of the money or currency in the one case, or the notes and bills in the other. It must therefore be taken as conceded that the relief sought in both cases was precisely the same. The only material difference in the two cases is simply in the form of alleging the demand or cause of action. In the original bill the averment is the improper obtension of certain money

83

or currency of a specified value or amount which the plaintiff claims he is entitled to recover, and in the amendment the averment is the improper obtension of certain notes and bills of a specified value or amount which the plaintiff claims he is entitled to recover. The value or amount of the things and the amounts sought to be recovered in both instances are alleged to be precisely the same. It is only the form of the things obtained by the defendant which is different. The substance both of the demand alleged and the relief sought is precisely the same in the original and the amended bills. It seems to me therefore that the amendment was properly allowed and sustained in this cause. The language, "It is also a different case entirely from that set out in the bill," employed by this Court in its opinion announced on the former appeal, must be construed and applied with reference to the facts in the particular case and other portions of the opinion, and when so construed it necessarily means that the character of the transaction out of which the plaintiff's cause of action arose, and the form in which it is alleged in the original bill, differs entirely from that proved, and not that there is a difference in the substance of the cause of action and relief sought in the two cases.

It is contended by the appellant that the circuit court erred in permitting the deposition of Joseph F. Paull, taken before the amended bill was filed, to be read upon the hearing on the amended bill. This contention is evidently based on the theory that the amended bill made substantially a new suit. We have seen that such is not the fact and consequently this claim is untenable.

It is also contended that the plaintiff's right of recovery had become barred by the statute of limitations before the filing of the amended bill. This claim is also based on the erroneous theory that the amended bill was in effect the commencement of a new suit. Even if the plaintiff's demand was in its nature subject to the bar of the statute of limitations, the statutory period of five years had not expired at the time this suit was first instituted. The rule prescribed by the statute is, that the day on which the cause of action arose must be excluded so as to make the time commence on the following day, which in this instance would be on Feb-

ruary 24, 1871; and this suit was commenced on February 23, 1876, which was one day less than five years. Sec. 12, ch. 13 Code; *State* v. *Beasley*, 21 W. Va. 777. But be this as it may, this question is *res judicata* as to this cause. 25 W. Va. 288, 297.

On the former appeal this Court held that A. C. Quarrier, the treasurer and cashier of the bank, could not by virtue of his office dispose of the discounted notes and bills of the bank, and the opinion states that there is no pretence that the cashier had authority to do so from the board of directors. After the amended bill had been filed, the appellant took depositions for the purpose of proving that in 1871, it was a custom in Wheeling for the cashiers of the banks of that city to transfer and dispose of the discounted bills and notes of the banks for the purpose of raising money to meet their demands. This was the only testimony introduced that was not in the cause when it was here on the former appeal.

The counsel for the appellant insists, that "no authority can be found which holds that the cashier, without authority from the directors, can not dispose of the discounted bills and notes of the bank;" and he asserts "that it is within the implied and presumed powers of the cashier, without any express authority from the directors, to transfer the negotiable securities owned by the bank, and to pass a good title thereto." It is admitted, however, that this presumption may be rebutted by showing, "that the attempt to transfer was for a fraudulent or other improper purpose of which the transferee had knowledge, and the transfer may be thus defeated."

These general legal propositions under some circumstances may not be incorrect. I think it is the practice for the cashier of a bank in pressing emergencies to re-discount the bills and notes of the bank to raise money to pay depositors and meet other demands of the bank. But this is only done on extraordinary occasions and when the requirements are such as do not admit of delay. It is customary, wherever it can be done, to consult the directors and obtain their consent to make such re-discounts. It is a matter which does not come within the ordinary duties of the cashier and is not one of his inherent powers; but inasmuch as it is a power which is exercised by him under some circumstances,

a transfer of such bills and notes made by him in the usual course of the business of the bank to a person, who has no reason to doubt the propriety of the transfer or to question its good faith, will be *prima facie* valid and vest a good title in the transferee. The validity of the transfer in such case will be sustained upon the ground that the transferee had a right to presume that the cashier had from the board of directors either an express or implied authority to make the transfer, and not because he had by virtue of his office inherent power to do so. *Hoyt* v. *Thompson*, 1 Seld. 320; *Hartford Bank* v. *Barry*, 17 Mass. 97; *Smith* v. *Lawson*, 18 W. Va. 212.

The cashier, however, is simply an officer or agent of the bank and he is bound to act in good faith in the transaction of the business of the bank; and those who deal with him are affected by any bad faith or want of authority of which they have knowledge. If the transaction itself is not in the usual course of business or is one which requires specific authority on the part of the cashier to perform it, the person dealing with him will be required to show that he, in fact, had authority to do the act, otherwise it will be held to have been done without authority. If the cashier transfers the notes of the bank to pay his private debt, the transaction will be invalid. No attempted transfer by the cashier of the bills, notes or other securities of the bank will be valid, when it appears, either from the nature of the transaction or the facts and circumstances existing at the time and known to the transferee, that the transfer was made in prejudice of the rights and interests of the bank. *Everett* v. *United States*, 6 Port. 166; *Barnes* v. *Bank*, 19 N. Y. 152; *Smith* v. *Lawson*, 18 W. Va. 212.

In the case at bar it is clearly shown by the proofs, that at the time the attempted transfer of the bills and notes in question was made by the cashier to Cecil, the appellant, the bank was utterly insolvent, that it had not money to meet the checks of its depositors, and there was no reasonable expectation on the part of its officers that it could continue its business or pay off its depositors in the usual course of business. These facts were known to appellant as well as the other officers and directors of the bank. In fact it is

apparent from the testimony of Cecil himself, that his purpose in obtaining the transfer to himself of these notes and bills was to escape the loss of his deposits then in the bank. The transfer was made at a time when he knew that without additional capital or other extraordinary assistance it would be impossible to pay off the other depositors or continue the business of the bank. It was not made in the usual course of business, but in contemplation of the closing of the bank and in order to give him a preference over other depositors having equally meritorious if not superior claims upon the bank.

It is unnecessary to decide in this case, whether or not the mere fact, that Cecil was a director of the bank as well as depositor, placed him in a position less advantageous than other depositors. Nor is it necessary to determine, whether or not the board of directors of an insolvent bank can assign or otherwise dispose of its securities or other assets in a manner, which will give preference to some of its creditors over others. These questions do not necessarily arise in this case. Here the preference was attempted to be mabe by the cashier. Whatever may be the powers of the board of directors in making such transfer, it is certain that the cashier, without positive authority from the board or stockholders, can not make such preference in favor of any depositor or creditor whether he be a director or not.

It was the plain duty of the appellant and the other directors and officers of the bank, at the time he obtained these bills and notes from the cashier, to have closed the bank, at least until its real condition had been determined, if it was not then positively known to be wholly insolvent and unable to continue its business. The directors well knew that it had sustained a great loss, one which if fully ascertained would have clearly shown that the bank was hopelessly insolvent. Under these circumstances, taken in the most favorable light from the standpoint of the directors, it was a fraud upon the rights of the bank and upon its customers to keep the bank open or to permit any deposits to be made in or withdrawn from it, either by the directors themselves or others. I am, therefore, of opinion that the transfer of the bills and notes of the bank to the appellant by the cashier

was such a fraud upon the rights of the bank and its customers as under the circumstances made the transaction ineffectual to give any title whatever to the appellant and that said bills and notes remained the property of the bank.

It appears from the decree appealed from, that the court has credited as payments on the amount decreed against the appellant certain sums, which the appellant would have been entitled to as dividends, at various dates between May, 1871, and October, 1876, on the deposits for which he obtained the bills and notes that he is required to account for by the decree. Nothing is said in the pleadings concerning these dividends, nor does it appear that any of them had ever been declared in favor of the appellant until that was done by crediting the same on the claim of the plaintiff in said decree. The appellant insists that these dividends are in the nature of offsets on which he was entitled to interest from their respective dates, and that therefore the court erred in crediting them as payments whereby he was virtually deprived of interest thereon.

It seems to me, that upon the pleadings and proofs in this cause there was no foundation for that portion of the decree here complained of; but if the decree was in that regard just and did not prejudice the rights of the appellant it ought not to be reversed. It is claimed by the appellee that, if these dividends are to be treated as offsets, they are barred by the statute of limitations and that therefore the allowance of them as payments on the debt was a benefit instead of a prejudice to the rights of the appellant. I think that these dividends are in their nature offsets and should have been so treated by the circuit court. None of them except the first equalled the interest on the debt as of the dates the credits are allowed, so that by treating them as payments they were applied to the accrued interest which produced the same result as if the interest had been calculated upon the plaintiff's debt up to the date of the decree and these dividends without interest had been then deducted. This is, in effect, what the decree does, and thereby the appellant is deprived of the interest on the dividends to the extent they are required to satisfy accrued interest on the plaintiff's debt. If, however, they had been treated as offsets, he would have been entitled to credit

not only for all the dividends, but for all of them with the interest on each from the date it should have been paid to the date of the decree.   *Hurst* v. *Hite*, 20 W. Va. 183.

Until the final decree was pronounced the bank was not treated as the debtor of the appellant as to the claim sued for, and he was consequently not entitled to any dividend on the same, but when that decree was rendered and he was required to surrender the consideration received by him from the cashier of the bank, he then and not until then in contemplation of law became entitled to dividends on said claim, but by relation his right to these dividends must be fixed as of the dates he would have been paid if the result of the suit had been known at the time the dividends were declared by the trustee, so as to equalize the payments to him with those of other creditors.   The statute of limitations can therefore have no effect.   For these reasons I am of opinion that the decree of the circuit court, so far as it has treated the dividends to which the appellant is entitled as payments instead of offsets, is erroneous; and inasmuch as that errror amounts to a sum in excess of $100.00 to the prejudice of the appellant, the said decree must be reversed with costs to the appellant, and such decree now entered by this Court as should have been entered by the circuit court.

REVERSED.