St. Paul & Minneapolis Trust Co. *vs.* Robert R. Howell *et al.*

Argued Oct. 15, 1894.    Affirmed Dec. 7, 1894.

No. 8774.

**Acceptance of the goods, to take a sale out of the Statute of Frauds.**
*Held,* that the evidence justified the jury in finding that, under an oral contract for the sale of personal property, there had been such a receipt and acceptance of the property by the buyer as satisfied the requirements of the statute of frauds.

**Facts stated.**
The president and cashier of a bank, intrusted with the management of its business, for a valuable consideration paid by the makers assumed the payment of a note belonging to the bank, and due in ninety days. They subsequently assumed, in behalf of the bank, to extend the time of payment eleven times in succession for ninety days each time, and at each extension paid the interest to the bank. It did not appear that during all this time the directors or other officials of the bank made any inquiry or investigation as to the management of its affairs by the president and cashier.

**Constructive notice and ratification implied.**
*Held,* that the jury were justified in finding that the bank was chargeable with constructive notice of the fact that the president and cashier were interested in the note, and hence ratified their acts in making the extensions.

Appeal by plaintiff, the St. Paul and Minneapolis Trust Company, as assignee, from an order of the District Court of Hennepin County, *Thomas Canty,* J., made December 16, 1893, denying its motion for a new trial.

On June 20, 1893, the Farmers and Merchants State Bank of Minneapolis being insolvent made an assignment to plaintiff under Laws 1881, ch. 148, as amended, of all its property in trust to pay its debts. The plaintiff accepted the trust and entered upon the discharge of its duties as assignee. Among the assets was a note for $1,000 dated October 21, 1890, made by the defendants, Robert R. Howell and David R. Howell payable to the bank or order ninety days thereafter without grace. On the back of the note were eleven different indorsements following each other dated ninety days apart and stating, "Interest paid and time extended ninety days."

When the note was made defendants delivered to the bank a certificate for twenty two shares of the capital stock of the Century Investment Company, another corporation doing business at Minneapolis. Endorsed thereon was an assignment of the stock executed by defendants, but the blank for the assignee's name was left unfilled. The defendants then made an oral agreement with Morton F. Scofield, the president of the bank, and Robert T. Lang, the cashier, selling them the stock, and they agreed to pay the note to the bank. A few days after the note fell due one of the defendants called at the bank and saw Scofield and asked him for the note and said, "I suppose it is paid." He said, "Yes, but I can't find it just now. I will look it up and send it to you." It did not come and defendants sent their bookkeeper for it but he was told by the cashier that it was mislaid and could not be found. The defendants never paid any interest on the note and never asked for and did not know of the extensions. They first heard of the payments of interest and extensions after the bank had assigned. Scofield and Lang paid the interest and made the first indorsement when the note fell due. They made the next payment and indorsement ninety days thereafter and so continued to do until the bank assigned.

· The plaintiff as assignee brought this action on the note. The defendants answered, stating these facts and alleging that the bank knew of them as they occurred, and consented to the extensions; that Scofield and Lang were then solvent, but are now insolvent; the defendants had a verdict. The plaintiff moved for a new trial and being denied appeals.

*H. D. Stocker*, for appellant.

The fact that Lang and Scofield paid this interest to the bank, was not known to the bank, nor was there any record or anything to show by whom the interest was paid; nor did the bank or any of its officers, except Lang and Scofield, know of the oral agreement made between Lang and Scofield and the defendants, nor was there anything of record to show that Lang and Scofield had entered into this oral agreement.

As a general rule the knowledge of or notice to a president or cashier of a bank, is notice to the bank itself; but to this gen-

eral rule there are exceptions, one of which is, that if the officer of the bank is acting for himself personally, knowledge and notice which he has individually are not notice to the bank and do not charge it with the knowledge he may possess and has not communicated to it. *First Nat. Bank* v. *Loyhed*, 28 Minn. 397; *Commercial Bank* v. *Cunningham*, 24 Pick. 270; *Washington Bank* v. *Lewis*, 22 Pick. 24; *Stevenson* v. *Bay City*, 26 Mich. 44; *Barnes* v. *Trenton Gas Light Co.*, 27 N. J. Eq. 33; *Winchester* v. *Baltimore & S. R. Co.*, 4 Md. 231; *Wickershan* v. *Chicago Zinc Co.*, 18 Kan. 481; *Atlantic State Bank* v. *Savery*, 82 N. Y. 291.

When this contract was made there was no writing signed, no consideration paid, or exchange of property made. The most that can be claimed for this contract is that Lang and Scofield orally agreed with defendants to pay the bank one thousand dollars in satisfaction of this note and were then to become the owners of the Century Investment stock. If the bank had had full notice of this contract it could not have maintained an action on it against Lang and Scofield. It was within the statute of frauds.

*Brooks & Hendrix*, for respondents.

The defense is that at the making of the note the makers assigned to Scofield and Lang, respectively the president and cashier of the bank, twenty two shares of corporate stock; that they, in consideration thereof, agreed to pay the note at its maturity, and thereby became primarily liable for its payment, and that the bank with notice of these facts, at the request of Scofield and Lang, and without the knowledge of respondents, extended the time for the payment of the note on eleven different occasions, and for a period all told of two years and nine months after the note by its terms became due.

The payment of interest which was admittedly made by Lang to the bank at the delivery of this stock as part payment for the stock was of itself sufficient to constitute the transaction a valid sale. It was payment by the purchaser of some part of the purchase money within the meaning of 1878 G. S. ch. 41, § 7. Furthermore the transaction was valid though no such payment had been made. By general mercantile usage, shares in a corporation are assignable by indorsement and delivery of the certificate. It is well settled that

after a certificate for shares has been indorsed by the holder, with an assignment and power of attorney to execute a transfer upon the stock books, the name of the transferee and attorney being left blank, the certificate thus indorsed may be passed from hand to hand, and the last holder will be entitled to fill up the assignment and power of attorney, and complete the transfer by entry upon the books of the company. Defendants delivered the stock and Scofield and Lang accepted it. 1 Morawetz, Corp. § 185; *Leitch* v. *Wells*, 48 N. Y. 585; *Baldwin* v. *Canfield*, 26 Minn. 43; *Nicollet Nat. Bank* v. *City Bank*, 38 Minn. 85.

This being a valid contract made upon a sufficient consideration, Lang and Scofield became primarily liable for the payment of the note. Respondents were sureties and as the bank extended the time of payment without the knowledge or consent of respondents, such extension discharged them from further liability in case the bank had notice of this agreement between them and Lang and Scofield. *Union Mut. Life Ins. Co.* v. *Hanford*, 143 U. S. 187; *Calvo* v. *Davies*, 73 N. Y. 211; *Millerd* v. *Thorn*, 56 N. Y. 402; *Smith* v. *Shelden*, 35 Mich. 42; *Wheaton* v. *Wheeler*, 27 Minn. 464; *Leithauser* v. *Baumeister*, 47 Minn. 151.

Notice to an active managing officer of an incorporated bank, given during banking hours at the usual place of business is notice to the bank. *Second Nat. Bank* v. *Howe*, 40 Minn. 390.

If the knowledge of the cashier concerning this agreement had been casually acquired or obtained while not acting for the bank, then such knowledge would not be notice to the bank if he was adversely interested; but as his knowledge was acquired while acting for the bank relative to this note it is notice to the bank, notwithstanding his interest in the transaction. *Bank of New Milford* v. *Town of New Milford*, 36 Conn. 93; *National Security Bank* v. *Cushman*, 121 Mass. 490; *Bank of United States* v. *Davis*, 2 Hill, 451.

The acts of an agent may be of such character and so long continued as to justify a reasonable inference that the principal had knowledge of them. *Fowlds* v. *Evans*, 52 Minn. 551; *Reynolds* v. *Collins*, 78 Ala. 94; *Neibles* v. *Minneapolis & St. L. Ry. Co.*, 37 Minn. 151.

MITCHELL, J.   Plaintiff's assignor, the Farmers' & Merchants' State Bank, held a note for $1,000, executed by defendants, as collateral security for which they had deposited with the bank a certificate of corporate stock, on which was indorsed an assignment executed by defendants, to whom the certificate was issued, the place for the name of the assignee being left blank.

On October 21, 1890, the defendants executed to the bank the note in suit in renewal of the note referred to, the stock certificate remaining in the bank as collateral security for the new note. The transaction was had with Scofield, the president, and Lang, the cashier, of the bank.

The principal defense to the note is that at the time of its execution the defendants sold the stock to Scofield and Long, who, in consideration thereof, assumed and agreed to pay the note, and that the bank, with knowledge of the facts, at the instance of Scofield and Long, and without the knowledge or consent of the defendants, extended the time of the payment of the note eleven times, for ninety days each time.   If these allegations are true, they constitute a good defense; for, as between themselves, Scofield and Long became principals, and defendants sureties; and if, with knowledge of that fact, the bank extended the time of payment without the consent of the defendants, the latter were released.

The defense that the notes had been paid, or at least that the bank was estopped to deny that they had not been paid, was withdrawn from the jury, and hence need not be considered.

It is also claimed that evidence was improperly admitted as to the insolvency of Scofield and Long.   But this was so entirely foreign to the issues submitted to the jury that, even conceding its immateriality, it is impossible to see how it could have prejudiced the plaintiff.

The two main questions in the case were—*First*, whether there had been such a delivery of the stock to, and receipt and acceptance of it by, Scofield and Long, as to constitute a valid contract of sale, within the provisions of the statute of frauds; and, *Second*, whether the bank was chargeable with notice of the agreement between defendants and Scofield and Long at the time the extensions of the note were made.

1. The contract of sale was not in writing, and Scofield and Long paid no money at the time. The stock, as already stated, remained in the bank as security for the new note. Scofield and Long, who transacted all the business for both the bank and themselves, had, as president and cashier, custody of the securities of the bank, and it would not lie in their mouths to say that the bank had no notice of, or did not consent to, the arrangement had between them and defendants. The property which was the subject of the sale was specific and definite. It was assignable by indorsement and delivery of the certificate; and, the assignment being in blank as to the name of the assignee, it would pass by mere delivery, and the last holder would be entitled to fill up the blank. Actual manual delivery was impossible, because the bank held it as security for the note. As between the defendants and Scofield and Long, the case stood precisely as if the latter had been strangers to the bank, and they and defendants had gone to the bank, and told its officers that defendants had sold, and Scofield and Long had bought, the stock, and assumed the payment of the note, and that, when they paid it, the bank should deliver the certificate to them, and the bank consented to the arrangement. In addition to the facts already stated, it appears that Scofield and Long themselves made the eleven successive extensions of the note, and at each extension paid the interest on it to the bank. This would probably not amount to such a payment of part of the purchase money as would satisfy the statute, because not made "at the time," but we think it is material upon the question of "receipt and acceptance."

The intention of the statute is that the alternative evidence required should be of such a nature as to constitute of itself, and in the absence of a writing, a sufficient safeguard against perjury, by requiring proof of such conduct on the part of the purchaser as involves an open and unequivocal recognition of the contract of sale. This recognition is to be shown by proof of payment of part of the price, or by proof of conduct of the purchaser with regard to the subject of the sale amounting to an acceptance and receipt of the property. To constitute acceptance there must be such conduct of the buyer in respect to the goods as shows that he has identified and recognized them as the goods which are his by virtue of the

alleged contract. Acceptance may be shown by the dealings of the buyer with the indicia of title; for example, as in this case with the stock certificate. Receipt and acceptance do not necessarily require manual taking possession of the property. In many cases this would be impracticable. Regard must be had to the nature, locality, and condition of the property. Constructive receipt and acceptance may be sufficient. If the property is not in the manual possession of the seller, but in that of his bailee, it would constitute a sufficient constructive delivery by the seller, and acceptance by the purchaser, if the seller gives up his control over the property, and this is communicated to the bailee, and assented to by him and by the buyer, thus changing the nature of the holding of the bailee.

There may also be a constructive delivery to, and acceptance by, the buyer of goods which were already in his hands at the time of the contract. The acceptance need not be contemporaneous with, but may take place at any time subsequent to, the making of the verbal agreement. Indeed, the subsequent conduct of the buyer with reference to the property is of the utmost importance, for the vital question is, has the conduct of the buyer with reference to the property, after all control over it was surrendered to him by the seller, been such as to show that he identified and treated it as his under the contract of sale? Tested by these principles, it seems to us clear that the evidence was such as to justify, if not require, a verdict that there was a delivery to, and a receipt and acceptance by, Scofield and Long. In submitting this to the jury as a question of fact, the court certainly did not err to plaintiff's prejudice. The instruction that a constructive delivery would be sufficient was correct, for, as applied to the facts, this meant that manual delivery of the certificate to Scofield and Long was not necessary. The court did not call the attention of the jury to the distinction between delivery by the seller and receipt and acceptance by the buyer; but, as plaintiff asked for no instructions on that point, it cannot be heard to complain of the omission.

2. The remaining question is whether the bank was chargeable with notice of the agreement between defendants and Scofield and Long at the time the extensions of the time of payment of the note were made, and with notice of the further fact that such extensions

had been made. There is no evidence that any officer of the bank, except Scofield and Long, had any actual knowledge of this agreement. It also appears in evidence that Scofield and Long themselves made these extensions, acting in the matter in a dual capacity,—for themselves in procuring the extensions, and for the bank in granting them. Much of the briefs of counsel is devoted to a discussion of the question whether, under the circumstances, the knowledge of Scofield and Long was the knowledge of the bank; but we have no occasion to consider the question, for the court expressly instructed the jury that it was not. The court also instructed the jury that, in making the extensions, the acts of Scofield and Long did not bind the bank, but left it to them to say from the evidence whether the bank was not chargeable with constructive notice of the fact that they were interested in the note, and were making the extensions in their own interest, and hence that the bank must be deemed to have ratified their acts in making them. Under the familiar rule that a person is chargeable with knowledge of what, in the exercise of ordinary diligence, he ought to have known, the evidence fully warranted the submission of this question to the jury, unless a different rule of conduct is to be applied to a corporation from that applied to a natural person.

While there was nothing on the face of the note to indicate that Scofield and Long were interested in it, yet the fact remained that it had been running for nearly three years, and had been extended every ninety days. This, of itself, was certainly calculated to excite inquiry on the part of any prudent business man why, and at whose instance, and for whose benefit, it had been extended so often, and permitted to run so long. If the principal had been a natural person, who had intrusted the management of his business to an agent, he would hardly be allowed to excuse himself, after so long a lapse of time, by saying that he had not investigated the manner in which his business was being conducted, and hence did not know the facts. If a different rule was to be applied to corporations, which can act only through agents, they could always shield themselves from the charge of constructive notice by saying that the impersonal corporate entity had no actual notice of the facts.

This covers all the assignments of error which we deem worthy

of special mention. The record discloses no prejudicial error, and the order denying a new trial is affirmed.

GILFILLAN, C. J., absent on account of sickness, took no part.

CANTY, J., having tried the case in the court below, took no part.

(Opinion published 61 N. W. 141.)