WILLIAM H. DAVENPORT AND BEVERLY P. DAVENPORT
v. GEORGE W. STONE, RECEIVER, ETC., ET AL.

*Banks and banking—Rediscount—Authority of cashier—Estoppel.*

1. Where a bank accepts from a debtor a renewal note with the same indorser, and said note is rediscounted for the bank under an arrangement with third parties for the rediscounting of its paper, and the proceeds are received by the bank, the non-surrender by the bank of the old note, and its failure to enter the new note on its books, will not prevent the new note from being regarded as rediscounted paper, or deprive the third parties to protection as *bona fide* holders of the new note.

2. Where the directors of a bank intrust its entire management to the cashier, neither the bank nor its receiver can be heard to deny the authority of the cashier to do any of those acts which the bank or its directors might lawfully authorize the cashier to perform.[1]

3. Plaintiffs, who had a verbal arrangement with a bank to rediscount its paper, at the request of the cashier, to whom the directors had given the entire management of the bank, rediscounted a note in the due course of business, and without any notice or reason to believe that the cashier had not full authority. And it is held that the directors had authority to rediscount the note, and that the exercise by the cashier of such authority is binding upon them.

Error to Ingham. (Person, J.) Argued February 1, 1895. Decided April 2, 1895.

*Assumpsit.* Defendant Stone brings error. Affirmed. The facts are stated in the opinion.

*M. V. Montgomery,* for appellant.

*Smith, Lee & Day,* for plaintiffs.

---

[1] See *Wing v. Commercial and Savings Bank,* 103 Mich. 565.

GRANT, J. This suit is brought against Stone, as the receiver of the bank, upon the following note:

"$1,500.  LANSING, MICH., Mar. 1, '93.

"Ninety days after date, I promise to pay to the order of Orlando F. Barnes fifteen hundred dollars, at the Central Michigan Savings Bank. Value received. Interest at 8 per cent. after maturity.

"JOHN J. BUSH."

Indorsed on the back: "Orlando F. Barnes," and "Payment guaranteed. Central Mich. Savings Bank, by Nelson Bradley, Cashier."

The plea was the general issue, with notice that, if the cashier undertook to guarantee the payment of the note in the name of the bank, such guaranty was without authority of the bank or of its directors, and was therefore unauthorized, illegal, and void. Upon the trial it was admitted by the parties:

"That for 10 years and upwards, last past, the Central Michigan Savings Bank was a banking corporation organized under the laws of this State; that on April 18, 1893, it became insolvent, and closed its doors; that on the 8th day of May, 1893, defendant Stone was appointed to be, and ever since has been, receiver for said bank; that during all said time, up to such insolvency, one Nelson Bradley was its cashier; that in 1890 notes and bills of the bank had been rediscounted through its cashier, Mr. Bradley, amounting to about $40,000, and this sum was increased so that at the time the note in suit was discounted they amounted to $100,000. The bank had all the time two departments, viz., a savings and a commercial. When plaintiffs commenced rediscounting for the bank, and ever since, its capital stock was $65,000, and the surplus $68,000. The surplus at the time the note in question was rediscounted was $100,000. August 11, 1890, John J. Bush presented his note for $1,500, at 90 days, indorsed by defendant Orlando F. Barnes, to the Central Michigan Savings Bank, for discount. The bank discounted said note, paying the proceeds to Mr. Bush. On November 12, 1890, on maturity of the note above-mentioned, Mr. Bush presented to said bank his note, signed by himself and indorsed by defendant Barnes, for

the same amount as the former note, for the purpose of renewing the same for 90 days, paying to said bank the discount on the same. The last-named note was not entered upon the books of the Central Michigan Savings Bank, but Mr. Bradley, the cashier of said bank, indorsed the same as follows: 'Payment guaranteed. Central Mich. Savings Bank, by Nelson Bradley, Cashier,'—and sent the same by mail to plaintiffs for rediscount, having previously had an understanding with plaintiffs by which plaintiffs had consented to rediscount some paper for the Central Michigan Savings Bank. Plaintiffs received said note by mail, with other notes, and discounted said notes; drawing its draft upon Detroit, payable to the order of Nelson Bradley, cashier, and mailing the same to the Central Michigan Savings Bank, at Lansing, Michigan. The proceeds of said Bush note, so discounted by plaintiffs, were used to pay the original note discounted by the Central Michigan Savings Bank August 11, 1890, and until said funds were received by the Central Michigan Savings Bank the said Bush note was carried by it as past due. Plaintiffs acted in entire good faith, supposing that they were rediscounting the paper for the Central Michigan Savings Bank in the ordinary way."

Mr. Bradley, the cashier, testified that for five years prior to the suspension of the bank he was its financial manager, and that the financial management of the bank was practically left to him by the board of directors. He testified that, besides himself, the president and one or two directors knew about the rediscount of paper by the bank, and there were six directors. No resolution was passed authorizing this rediscount. Plaintiffs testified that they were not aware who the officers of the bank were, besides Mr. Bradley, nor what amount of paper had been rediscounted, and that they took this note in the usual course of business.

1. It is claimed that this note was not in fact rediscounted paper. The note was presented to the Central Michigan Savings Bank by Mr. Bush in renewal of his former note. It was indorsed by the same party as the other. Bush paid the discount. It was tendered to and

accepted by the bank as a renewal of the other note, and in its place. The new note became thereby the property of the bank. It was sent to plaintiffs, as the note of the bank, for rediscount, under a parol understanding that they would rediscount paper for it. The money was forwarded to the bank, and it got the benefit of it. The acceptance of the new note and the discount constituted a new and binding contract between Bush and the bank. The latter could not maintain suit upon the old note, nor transfer it so as to give it any validity in the hands of the transferee. The facts that it was not surrendered,— the reason for which is wholly unexplained,—and that the new note was not entered upon the books of the bank, do not change the nature of the transaction. To hold that this is not rediscounted paper, and that plaintiffs are not entitled to protection as *bona fide* holders of such paper, would be a reproach upon our jurisprudence.

2. The directors intrusted the entire management of the bank to the cashier, Mr. Bradley. Therefore, neither the bank nor its receiver can now be heard to deny the authority of the cashier to do any of those acts which it or its directors might lawfully authorize the cashier to do. The rule is stated by Mr. Morse as follows:

"If the directors have for many years allowed the cashier to do, without interference, all the business of the bank, they are held thereby to have conferred upon him authority to do anything and everything on the corporate behalf which the charter or law does not absolutely prohibit and forbid a cashier to do, and so render illegal under all circumstances." 1 Morse, Banks, § 165, par. *c.*

In such case the authority of the cashier will be presumed when the paper is in the hands of a *bona fide* holder for value, without notice of any defect in his authority. Id. § 165, par. *b*; *Kimball v. Cleveland*, 4 Mich. 606; *Smith v. Lawson*, 18 W. Va. 212, 227. In this last case many authorities are cited. *Wild v. Bank*, 3 Mason,

505; *Houghton v. Bank*, 26 Wis. 663, 670. And the indorsement by the cashier for the bank, though wrongful, will bind the bank, and estop it to deny his authority. 1 Morse, Banks, § 158, and par. *d; Bird v. Daggett*, 97 Mass. 494; *Robb v. Bank*, 41 Barb. 586; *Bank of New York v. Muskingum Branch of Bank of Ohio*, 29 N. Y. 619; *Monument Nat. Bank v. Globe Works*, 101 Mass. 57; *Merchants' Bank v. State Bank*, 10 Wall. 604, 644.

3. It is claimed that the rediscount of paper is, in effect, a sale of the property of the bank, and that the cashier cannot do this except on extraordinary occasions, and when the requirements are such as do not admit of delay. Two authorities are cited to support this proposition. *Bank v. Armstrong*, 152 U. S. 346, 351. It is there said:

"The business of the bank is to lend, not to borrow, money; to discount the notes of others, not to get its own notes discounted."

One Harper was vice-president and general manager of the Fidelity National Bank, who negotiated a note made by one Gahr for $200,000, and indorsed by Harper. Complainant sought to charge the bank, although the money was used by Harper, and the bank received no benefit from the loan. Neither in fact nor in principle is that case similar to the one now before us.

The other case is *Lamb v. Cecil*, 25 W. Va. 288, which was again before the court in 28 W. Va. 653. In that case, Cecil was a director of the bank, and had a deposit. The bank became hopelessly insolvent, and, with full knowledge of the condition of the bank, the cashier, acting fraudulently with Cecil, turned over to him some discounted paper in payment of his deposit. Such transfer was held void. Both the cashier and Cecil, a director, occupied positions of trust towards the depositors and stockholders. If that case is construed to hold that a cashier has no presumed authority to turn out the notes

and assets of a bank in payment of its debts, it is in direct conflict with the decision of this Court in *Kimball v. Cleveland, supra.* It is, however, there said:

> "I think it is the practice for the cashier of a bank, in pressing emergencies, to rediscount the bills and notes of the bank to raise money to pay depositors and meet other demands of the bank. But this is only done on extraordinary occasions, and when the requirements are such as do not admit of delay. It is customary, wherever it can be done, to consult the directors, and obtain their consent to make such rediscounts. It is a matter which does not come within the ordinary duties of the cashier, and is not one of his inherent powers; but, inasmuch as it is a power which is exercised by him under some circumstances, a transfer of such bills and notes, made by him in the usual course of the business of the bank, to a person who has no reason to doubt the propriety of the transfer, or to question its good faith, will be *prima facie* valid, and vest a good title in the transferee. The validity of the transfer in such case will be sustained upon the ground that the transferee had a right to presume that the cashier had from the board of directors either an express or implied authority to make the transfer, and not because he had, by virtue of his office, inherent power to do so." *Lamb v. Cecil,* 28 W. Va. 659.

The question now under discussion was not involved in either of these cases. The question, however, is reduced to the power of the board of directors; for, as already shown, if the board had the power, and the cashier exercised it, under the above facts, his act binds them. We are not concerned to determine whether such a power is wise or unwise. Much can be said against it. It would, however, be a surprise to the banking interests of the State to find that no such power existed. It has been exercised for many years, and in the course of the business the transferring bank makes itself liable by indorsement. The rediscounting bank must, of course, rely upon the liability of the transferring bank, with whose responsibility it is familiar.

The extent of this business will be seen from an examination of the reports of the Commissioner of Banking, under the heading· "Notes and Bills Rediscounted." An examination of the report of 1893 discloses that there were 68 State banks and 45 national banks in this State carrying rediscounted paper. The amount of such paper, December 19 of that year, was nearly $1,100,000. There must therefore have been a concensus of opinion among the attorneys for these banks that such power existed. We need not ·discuss the subject further. The authorities fully sustain this power. *People's Bank v. National Bank,* 101 U. S. 181; *Bank v. Wheeler,* 21 Ind. 90. See, also, *Bank v. Perkins,* 29 N. Y. 554; *Cooper v. Curtis,* 30 Me. 490. Plaintiffs rediscounted this paper in the due course of ˋbusiness, and without any notice or reason to believe that ˋthe cashier had not full authority.

Judgment affirmed.                                    ◆

The other Justices concurred.