FIRST NATIONAL BANK OF KALAMAZOO *v.* STONE.[1]

1. BANKS AND BANKING—REDISCOUNTED PAPER—LIABILITY OF BANK UPON INDORSEMENT.

The defendant bank, in response to plaintiff's request for some good paper with defendant's indorsement, sent to plaintiff, "for discount and returns," a note payable at the defendant bank to the order of third parties, indorsed by them in blank, and bearing defendant's guaranty of payment. *Held:*

(1) That, the transaction being in accordance with defendant's usual method of rediscounting paper, the note would be treated as paper rediscounted by the bank, although no record was made upon the bank books, except to credit the maker of the note with the proceeds thereof, less a charge made by the bank.

[1] Rehearing denied December 24, 1895

(2) That plaintiff, having received the note in good faith and for value, would be entitled to protection, even though the officials of the defendant bank who negotiated the transfer may have sought to defraud the plaintiff or the stockholders of their own bank.

**2.** SAME—AUTHORITY OF CASHIER.

A bank the directors of which have for several years intrusted the entire management to the cashier is liable upon the latter's indorsement in its behalf of paper negotiated by him as the property of the bank in the usual course of the business.

Appeal from Ingham; Person, J. Submitted June 11, 1895. Decided September 26, 1895.

Petition of the First National Bank of Kalamazoo for an order requiring George W. Stone, as receiver of the Central Michigan Savings Bank, to recognize and pay the claim of petitioner. From an order granting the petition, defendant appeals. Affirmed.

*Osborn, Mills & Master*, for petitioner.

*M. V. Montgomery*, for defendant.

GRANT, J. The First National Bank of Kalamazoo presented a claim against the defendant upon two promissory notes for $5,000 each, executed by the Lansing Iron & Engine Works, one to the order of O. M. and O. F. Barnes, and the other to the order of O. F. Barnes, payable at the defendant bank. The former was indorsed by O. M. and O. F. Barnes, and the other by O. F. Barnes, and both were indorsed by the defendant bank. The claim was allowed by the court, and the receiver appeals.

The first note originated in 1886; the second in 1889. Both had been renewed every 90 days, until the failure of the defendant bank in 1893, each renewal note being the same in form as the original. The defendant bank had attended to the renewals, and remitted the discount to the claimant. Two trials were had in the circuit court, upon the first of which Mr. Bradley, the cashier of the defendant bank, testified that the original paper was

rediscounted paper.   This state of facts brought the case directly within that of *Davenport* v. *Stone*, 104 Mich. 521. The evidence upon the second trial differs only from that upon the first in that one of the bookkeepers of the defendant bank and Mr. Bradley, the cashier, testified that the bank books do not show that these notes were first discounted by the defendant bank.   The claim is therefore made that this was not rediscounted paper.   In *Davenport* v. *Stone* the last note, the note upon which suit was brought, was not entered upon the bank books. The correspondence in regard to these notes and their renewals was carried on in the manner usual between banks.   The first letter by the claimant was written June 24, 1886, by the cashier of the Kalamazoo bank to the cashier of the defendant bank, and reads as follows:

"I have a surplus of funds at present, and would like some good paper.   Can't you send me some good paper with your bank indorsement, say three to five thousand, on time 60 to 90 days?"

In reply to this the defendant bank wrote:

. "Inclosed I hand for discount and returns Lansing Iron & Engine Works, $5,000, 3 mos. from June 28, 1886."

The correspondence in regard to the second note does not appear.

Three of the five or six directors were cognizant of these transactions while they were going on, one of whom was at one time president, and another cashier during the entire time.   These notes were in the form commonly taken by the defendant when it discounted paper, and in the form common among banks.   While the correspondence does not in terms speak of rediscounted paper, yet it is entirely manifest that these notes were sent and received as the paper owned by the defendant bank.   The claimant did not ask the defendant to go out as its agent and make loans for it, but asked it to send good paper with its indorsement.   Fairly interpreted, this means

106 MICH.—24

paper then owned by the defendant. Mr. Bradley, un-
doubtedly, stated the exact truth in his examination on
the first trial when he said this was rediscounted paper.
It appeared in *Davenport* v. *Stone*, as it also appears in
this case, that this was the customary method of doing
business, and that there was about $100,000 of such paper
outstanding. The mere fact that no record was made
upon the books of the bank, except to credit the maker
of the note with the proceeds thereof, less a charge made
by the defendant bank, does not establish the fact that
this was not rediscounted paper. Especially is this true
in the presence of the testimony of Mr. Bradley upon the
first trial, and the fact that the business was done in the
usual manner. Even if there had been an attempt or
design upon the part of defendant's cashier and the
directors who were cognizant of the transaction to de-
fraud either the claimant or the stockholders of the
defendant bank, this would not affect the rights of the
claimant, who acted in good faith, without any knowledge
of the real state of affairs, and for a valuable considera-
tion. *Chemical Nat. Bank* v. *Armstrong*, 8 C. C. A. 155,
13 C. C. A. 47 (28 L. R. A. 231).

Another complete answer to the defendant's position
is that the directors are chargeable with knowledge of the
transaction, because courts will presume that the direct-
ors knew what by due diligence they might have known.
No director of the defendant bank has testified that he did
not know the method of doing business. It is evident
that they might have known had they made the investiga-
tion which law and common prudence require of such
officers. If they chose to trust the entire management to
their cashier, the bank is liable. This was sufficiently
discussed in *Davenport* v. *Stone*, *supra*. See, also, *St.
Paul & M. Trust Co.* v. *Howell*, 59 Minn. 295; *Martin* v.
*Webb*, 110 U. S. 7.

The order of the court allowing the claim is affirmed,
with costs.

The other Justices concurred.