JAMES R. HUME, Respondent, v. GEORGE B. EAGON, Appellant.

**St. Louis Court of Appeals, March 13, 1900.**

1. **Chattel Mortgage:** PROMISSORY NOTE: CONSIDERATION. Where a promissory note secured by a chattel mortgage, is due one day after date and no extension of time is given, for the payment of the note, when a second chattel mortgage is given subject to the first, and the original note is not surrendered or cancelled but continues in force; Held, that the second note and chattel mortgage are purely voluntary acts on the part of the maker, and are without consideration and void.

2. ———: ———: FICTION OF LAW: LIEN: INTERVENOR: AT-TACHMENT. Special reasons sometimes exist why effect should be given to a transaction as if it had taken place at an earlier date, and by fiction of law, the transaction or act, is made to relate back, but this fiction is never applied so as to destroy or impair the title or lien of an innocent intervenor to the thing or transaction to which it is sought to apply the fiction of relation.

3. ———: ———: LEVY. In the case at bar it is held that the goods were proper subjects for levy and seizure under the writs of attachment and that the lien thus acquired by the attaching creditors was superior to the claim assigned to respondent under the second chattel mortgage, which was given without consideration.

4. **Statutory Construction:** BANK: WRITTEN RECORD. The terms null and void as used in section 1294 Revised Statutes of Missouri, denote that the forbidden acts therein mentioned should not be merely voidable, but that they should be, unless previously authorized by the written record of a directors' meeting of the bank, without any force or validity whatever.

Appeal from the Clark Circuit Court.—*Hon. Edwin R. McKee*, Judge.

REVERSED AND REMANDED (*with instructions*).

*Berkheimer & Dawson* with *Chas. Hillen* for appellant.

(1) There was no consideration moving from the plaintiff Hume, to John B. Sawyer, to support the second mortgage given to secure the note assigned by the bank. The note was given payable in one day from date and was long past due. There was no extension of time given for the payment of the same. There is no evidence of any benefit or advantage moving from Hume to the mortgagor, Sawyer, or from any third person. There is no evidence that Hume parted with anything of value for the execution thereof. There is no evidence that Hume released any security lien or anything else he held against Sawyer, but on the contrary Hume took both mortgages and recorded them on the same day. The first mortgage given the bank, if Hume was the owner of the note as between him and Sawyer, was a good and valid mortgage. Ins. Co. v. Am. Elec. Mfg. Co., 64 Mo. App. 115; Lancaster v. Elliott, 55 Mo. App. 249; Ins. Co. v. Am. Elec. Mfg. Co., 64 Mo. App. 115. (2) Hume, the plaintiff, had no title to the property or right of possession as he claimed title through the note assigned to him by George Bostic the president of the Kahoka Savings Bank who, as such officer, had no authority whatever to sell and assign the note, an asset of the bank. Acts 1895, sec. 1; sec. 2729. (3) Even at common law an officer of a corporation had no such power. 1 Jones on Mortgages of Real Estate [3 Ed.], sec. 798; 1 Morse on Banking [3 Ed.], secs. 144, 294; Smith v. Lawson, 18 W. Va. 212; Hume v. Eagon, 73 Mo. App. 271; Smith v. Richardson, 77 Mo. App. 422; Calumet Paper Co. v. Haskell Show Ptg. Co., 144 Mo. 331;

Withers v. Lafayette County, 67 Mo. App. 115. (4) "The president of a corporation without the authority of the board of directors can not convey and assign the assets of the bank or convey the corporate property." The exception was applied in favor of garnishing creditor. The case is not distinguishable in principle. Goodwin v. McGee, 19 Ala. 468; Pollock v. Cohen, 32 Ohio St. 514.

*O. S. Callahan, T. L. & S. J. Montgomery* for respondent.

(1) The two points chiefly relied upon by appellant and so persistently reiterated in his brief, to wit: That plaintiff acquired no title to the Sawyer note, under the assignment made to him, by the president of the bank without authority from the board of directors, because such act of assignment was made null and void, by the act of 1895 (p. 120), and being void, it could therefore not be ratified, were expressly decided against appellant's contention when the case was before this court on a former appeal taken by plaintiff. (2) It is not denied that respondent took possession of the property under the chattel mortgage executed to him by Sawyer on the twentieth day of January, 1896. On the contrary, the fourth count of appellant's answer, expressly states that he did. (3) The proof shows, and it is also admitted by the pleadings, that respondent immediately took possession of the property. So that even if the mortgage was void on its face, as a matter of law (which it is not, as it does not by its terms permit the mortgagor to sell the property), the taking possession of the property by respondent, would have cured such invalidity. Kuh v. Garvin, 125 Mo. 547. The imposing array of authorities cited by counsel for appellant, do not sustain the points made in the brief, as to their application to the facts in this case. The case of Calumet Paper

Co. v. Haskell Show Ptg. Co., 144 Mo. 331, is one of the many instances of such deficiency.

BLAND, P. J.—John B. Sawyer was a retail dealer in boots, shoes, glass, queensware and woodenware in the city of Kahoka, Missouri, on and for some time prior to January 20, 1896. On March 12, 1895, Sawyer, to secure to the Kahoka Savings Bank (a corporation organized under the laws of Missouri), signed, acknowledged and delivered a chattel mortgage on his stock in trade to said bank to secure a note which he had made to the bank for $750; this mortgage was not then put on record, but held by the bank until January 20, 1896, when the note for a valid consideration, was endorsed by George Bostic, the president of the bank, and delivered with the mortgage to respondent, James R. Hume; on the same day that Hume got possession of the note and mortgage, he took a second mortgage from Sawyer for his stock of goods then on hand to secure the note, but subject to the first or bank mortgage, and had both mortgages recorded at once, and on the same day took possession of Sawyer's store and goods as mortgagee (the note to secure which the mortgages were given then being long past due). At the time of the assignment of the note and mortgage to him by Bostic, Hume was and for a long time prior thereto had been the cashier of the Kahoka Savings Bank, and was familiar with the Sawyer transaction and with Sawyer's business and financial condition. On January 22, 1896, the Bradley-Metcalf Company (a corporation) and Irwin Phillips & Company, began suits by attachment against Sawyer in the Clark Circuit Court, caused writs of attachment to issue against him, and to be delivered to the sheriff, George B. Eagon (appellant herein), by virtue of which writs he seized and levied upon the Sawyer stock of goods, then in the possession of Hume as mortgagee of Sawyer. Hume then brought this

suit in replevin against the sheriff for the recovery of the goods. A trial was had, resulting in a verdict and judgment for Hume, from which Eagon duly appealed, and the case is properly here for review, and for the second time.

On January 11, 1897, the board of directors of the Kahoka Savings Bank met in session and by resolution duly passed, ratified the sale and assignment of the note and mortgage by Bostic to Hume of date January 20, 1896. On the first appeal we held that this might be done, and that such a ratification would pass title of the note and mortgage from the bank to Hume (see 73 Mo. App. 271). This ruling on the first appeal must govern on this appeal. Thompson, Payne & Co. v. Irwin, Allen & Co., 76 Mo. App. l. c. 432; and this is so even though the first ruling was erroneous. Crecelius v. Bierman, 68 Mo. App. 34, and cases cited. Hume to recover relied on his note and recorded mortgage, and the fact that he had possession of the goods at the time of the levy of the attachment writs. Defendant introduced evidence tending to prove that the attaching creditors had no knowledge of the existence of the bank mortgage, or of the fact that Sawyer owed the bank; that between the dates of the execution of the first mortgage and of its going on record, they sold Sawyer goods for which their suits were brought, and gave him credit on the faith of the quantity of goods he had on hand, and the apparent condition of his business; that they were subscribers to the Dun Mercantile Agency, and that had the mortgage been placed of record they would have been immediately notified of the fact, and had they had knowledge of the mortgage they would not have extended Sawyer's credit. The court at the instance of respondent gave the following instruction, to which appellant objected and excepted:

"The court instructs the jury that if they shall believe from the evidence in the cause that the indebtedness secured

by the chattel mortgage in evidence to the Kahoka Savings Bank was a valid and subsisting indebtedness for money loaned to John B. Sawyer by said bank and that the note as evidence of said indebtedness was assigned by George Bostic, president of said bank, to plaintiff, and that thereafter, to wit, on the eleventh day of January, 1897, at a meeting of the board of directors of said bank the assignment was ratified, and confirmed and approved by said board of directors, and that John B. Sawyer to secure the indebtedness to the plaintiff executed to the plaintiff the chattel mortgage read in evidence and that said plaintiff accepted said note and mortgage in good faith to secure said indebtedness and that thereafter and before the levy of the attachment writs by the defendant, sheriff, herein, the plaintiff, James R. Hume, took actual possession of said stock of groceries, provisions and merchandise in said mortgage described including the goods attached and levied upon by the defendant, sheriff, for the purpose of selling them under the mortgage and paying said debt out of the proceeds of said sale and was so in possession of said stock at the time of the levy of said writs by the defendant, sheriff, and that plaintiff's said debt had not been paid, your verdict should be for the plaintiff."

1. The contention of appellant is that the mortgage given by Sawyer to Hume on January 20, 1896, was without consideration and void. The note was due one day after date; no extension of time was given Sawyer for the payment of the note, when he executed the second mortgage; no consideration whatever passed from Hume to Sawyer for the execution of the new mortgage; the original one was not surrendered or canceled, but was to continue in force, since the second was made subject to the first, and both were placed on record simultaneously, and Hume immediately took possession of the goods under both mortgages and offered both in evidence as valid and subsisting liens. There was not the

least advantage gained or benefit received by Sawyer for the second mortgage, nor did Hume surrender anything or right for it; it was purely a voluntary act on the part of Sawyer, from which he received no benefit whatever, and we are bound to hold that it was given without consideration, and therefore invalid. Marks v. Bank, 8 Mo. 319; Lamp Co. v. Mfg. Co., 64 Mo. App. 115.

2. Appellant further contends that while as between the Bank and Hume, the ratification of the assignment of the note and mortgage by Bostic to Hume may relate back to the date of the assignment and invest Hume with title from that date as against the bank, yet it can not have this effect as against the plaintiffs in the attachment suits, whose liens were acquired long prior to the act of ratification. Special reasons sometimes exist why effect should be given to a transaction as if it had taken place at an earlier date, and by fiction of law the transaction or act is made to relate back; but this fiction is never applied so as to destroy or impair the title or lien of an innocent intervenor to the thing or transaction to which it is sought to apply the fiction of relation. As between the bank and Hume, and Hume and Sawyer, the doctrine may be well applied, but not so as between Hume and the attaching creditors of Sawyer, whose liens attached long prior to the act of ratification. Calumet Paper Co. v. Haskell Show Ptg. Company, 144 Mo. 331. As nothing passed to Hume at the date of the assignment (section 2759, Acts of 1895, p. 120), as to the attaching creditors of Sawyer he was in possession of the attached goods as the bailee of Sawyer. Calumet Paper Co. v. Haskell Ptg. Co., *supra*. These goods were therefore proper subjects for levy and seizure under the attachment writs, and the lien thus acquired by the attaching creditors was superior to the claim of Hume. The court committed error in giving instruction number 1 for plaintiff. Under all the evidence there should have been

a peremptory instruction to the jury to find the issues for the defendant.

This view of this feature of the case makes it unnecessary to notice the other assignments of error. The judgment is reversed and the cause remanded, to be proceeded with in accordance with the views herein expressed.

Judge *Bond* concurs in the result and in paragraph two of the foregoing opinion. Judge *Biggs* dissents.

### SEPARATE OPINION BY JUDGE BOND.

I concur in the result reached in the opinion of Judge Bland reversing and remanding this cause, and I also concur in the argument contained in the second paragraph of his opinion. But this second appeal in this case (73 Mo. App. 271) presents again the question as to the true meaning and intent of the statute (Session Acts 1895, page 120) construed by this court on the former appeal. It was the phraseology of this act as it stood when it was first adopted in 1895 which was before us on the former appeal. It has, however, since that time undergone a material amendment (see Session Acts of 1897, p. 89, now R. S. 1899, sec. 1294). The chief purpose of this amendment was to superadd to the previous general restriction upon the power of the cashier of a bank to dispose of its securities without the authority of the board of directors, another limitation, which required that such authority from the board of directors should be given *"in a regular meeting of the board, a written record of which proceeding shall first have been made."* Both the original and amended acts conclude, to wit "And all acts of indorsing, selling, pledging and hypothecating done by said cashier (or other officer or employee of said bank) without the authority from the board of directors, shall be null and void." The words in parenthesis in the above quotation were also added in the amended act. After mature reflection and a re-ex-

amination of the grounds of our former opinion that an act of the cashier in violation of the prohibition and above sanction of the statute was merely voidable, I have become dissatisfied with the correctness of the view announced in that opinion. This feeling has been intensified into conviction by a consideration of the additional limitations upon the power of the cashier of banks, extended also to other employees, contained in the act of 1897. The evident purpose of the latter statute was to condition the validity of the acts of the cashier, and other employees, in the cases mentioned, upon a prior, formal and regular authorization by the board of directors. This object "jumps at the eyes" upon a reading of the act. But the act does not stop at a mere prohibition of certain acts on the part of the cashier or other employees of the bank. It provides in the next breath that such forbidden acts *"shall be null and void."* I can not escape the conclusion that with such a purpose in mind the legislature intended and designed the words "null and void" to express their natural meaning—nothingness and emptiness—and that any other construction would torture the meaning of the terms and defeat the evident primary purpose of the legislature. I have been wholly unable to find any case in which the conjunction of these words was held to express a different idea. This reflection has wholly shaken my confidence in the discussion contained in the former opinion in this case, which deals entirely with the well known variant meaning of the term "void," and leaves entirely out of view the force of the precedent word "null." These words were coupled together in the statute, hence they must be construed together. To speak of the legal aspects of an act as *"null and void,"* necessarily implies that it is without any legal substance or validity, for if it have either of these, such characterizing words are meaningless. No canon of construction justifies the destruction of the meaning of words which is in

accord with the primary intent or purpose of the statute in which they are used. The mischief had in view by the legislature was the unauthorized dealings of cashiers of banks, and other employees, with the notes and obligations of their principals. To curtail the power of alienation of such securities the law in question was enacted and subsequently amended by adding other limitations. To compel obedience to its mandate the legislature expressly declared that all acts in defiance thereof *"shall be null and void."* To deny these terms, under such circumstances, their natural force and meaning, is simply to annul the clear intent of the legislature and to annul also the plain meaning of the words employed to effectuate it. Evidently such a contention could only be sustained by a resort to judicial legislation. I am, therefore, of the opinion that the argument in support of our former opinion is inconclusive and that the construction given in the former opinion of the statute under review is neither warranted by its intent nor terms, and should not be adhered to in the future. I think the use of these terms in the statute as amended, denoted that the forbidden acts should not be merely voidable but that they should be, unless previously authorized by the written record of a board meeting, without any legal force or validity whatever. Having reached this conclusion as to the true meaning and purpose of the statute referred to in our former opinion, and now amended and set forth in section 1294 of the Revised Statutes of 1899, I deemed it my duty to the profession to make a frank statement of the change in my own view and the reasons which caused it.

BLAND, P. J.—I agree that "null and void" as used in the statutes referred to in the foregoing opinion means utterly void and not voidable only.