ANNA BELLE COWLES, RESPONDENT, v. JOHN WELLS, APPELLANT.[*]

Kansas City Court of Appeals. January 23, 1928.

*Corpus Juris-Cyc. References: Banks and Banking, 7CJ, p. 553, n. 2; p. 757, n. 55; Bills and Notes, 8CJ, p. 1071, n. 74; Rediscounted Note, 34Cyc, p. 767, n. 36.

*Baker & Baker* for respondent.

*Cave & Cuthbertson* for appellant.

FRANK, C.—This action is on a promissory note. The case was tried by the court, without the aid of a jury. Plaintiff recovered judgment in the trial court and defendant appealed.

The Auxvasse Bank was a banking corporation located in Callaway county.

The note was executed by defendant to the Auxvasse Bank for $2000, with eight per cent. compound interest from its date of June 21, 1924, due on demand. It was transferred to plaintiff by the following indorsements:

"We hereby assign this note to B. and A. B. Cowles and guarantee payment of same.

"AUXVASSE BANK

"By F. C. STOKES, Cashier."

"Pay to the order of Anna Belle Cowles, June 29, 1924.

"B. COWLES."

Plaintiff's husband, B. Cowles, acting for her, purchased this and other notes from the Auxvasse Bank, paying for same with two checks drawn on his and his wife's account in said bank, one for $4700, dated June 19, 1924, the other for $145.55, dated July 1, 1924. The note in suit is dated June 21, 1924. Plaintiff's husband testified that he bought the notes on June 20, 1924, and they were indorsed by Stokes, the cashier, and delivered to him on that date. The $4700 check was stamped across the face as follows:

"Auxvasse Bank paid June 20, 1924.

"Auxvasse, Missouri."

The $145.55 was stamped paid in the same manner on July 1, 1924.

Plaintiff's husband testified that the checks he gave for the notes were written out by Stokes, and he signed them without noticing the dates thereon. The bank was closed by order of the board of directors on July 7, 1924, and its affairs placed in the hands of the Commissioner of Finance, who proceeded to liquidate its assets.

Appellant calls attention to the fact that the note is dated June 21, 1924, and the $4700 check given in payment thereof is dated June 19, 1924, and contends that the discrepancies as to dates raises a serious doubt as to respondent's title to the note and the genuineness of the transaction, not on the theory that the check was not given to pay for the note, but on the theory that it tends to show that the cashier was not authorized to sell the note. Of this contention appellant says,

"These facts, together with the positive testimony of the board of directors, who were present at the board meeting on May 3, 1924, that they did not authorize or even discuss the question of selling appellant's note, or any other note, at such meeting, would indicate that the whole transaction was made by the cashier without any authority, and done in such haste in the dying moments of the bank that the proper dates were not checked and made to tally."

Plaintiff offered and the court admitted in evidence, over defendant's objection the minutes of the meeting of the board of directors of the bank held on May 3, 1924, as follows:

"May 3, 1924.

"The Board of Directors of Auxvasse Bank met in regular session this 3rd day of May, 1924, with the following Directors present: J. S. Harrison, B. M. Yates, J. E. Neff, W. H. Cornelius, F. C. Stokes.

"The minutes of the last meeting were read and approved and all loans made since the last meeting being those from No. 16358 to 16367 were read and approved. Also all excess of $100 new loans and all overdrafts of $100 and over.

"Cashier called attention to small cash balance on hand and asked for instructions. Cashier ordered to borrow more money and rediscount.

"There being no further business before the Board the Board adjourned.

"F C. Stokes, Secty.

"J. S. Harrison."

For several months before the bank closed it was hard pressed for cash with which to operate. There is no evidence that the resolution of May 3, 1924, was not passed. Four directors of the bank were called as witnesses. None of them testified that this resolution was not passed. They each testified that the bank was in need of money and they authorized the cashier to borrow money and pledge the bank's assets as collateral but did not authorize him to sell any notes. The

minutes of the monthly meeting held on June 7, 1924, show that the minutes of the last meeting were read and approved.

Of this June meeting, one of the directors testified:

"Q. When you met on June 7th, you approved the record of May 3rd, where the board authorized him to rediscount notes? A. Likely, we did.

"Q. And you did not know then but you know now that 'rediscount' meant 'sell'? A. Likely I didn't think just what he was reading. I might have known it if I had thought, just what it was."

Defendant admits that he executed the note to the bank for a valuable consideration and that payment thereof was demanded and payment refused.

Whether or not plaintiff bought and paid for the note, and whether or not the resolution of May 3, 1924, was passed by the board of directors of the bank, were questions of fact to be determined by the trier of the facts. There being substantial evidence of such facts, the finding of the trial court thereon is conclusive here.

Whether or not the resolution of the board of directors on May 3, 1924, is sufficient to authorize the cashier of the bank to sell the note in suit, is a question of law to be determined by the court.

Appellant makes three assignments of error in this court (1) the court erred in not sustaining appellant's demurrer offered at the close of all the evidence; (2) the court erred in admitting the minutes of the board of directors' meeting of May 3, 1924, and (3) the court erred in finding that the respondent was a legal holder of said note and entitled to maintain suit on the same, under the evidence in this case.

These assignments may be considered together, because they all go to the authority of the cashier to sell the note.

Appellant contends that the cashier of the bank had no authority to sell the note to plaintiff, and cites in support of this contention sections 11762 and 11752, Revised Statutes 1919; Humes v. Egan, 83 Mo. App. 576; Miles v. Bank, 187 Mo. App. 230; Bank of Kirksville v. Sloop et al., 200 S. W. 72; Stover Bank v. Welpman, 284 S. W. 177.

Section 11762, Revised Statutes 1919, provides:

"The cashier or any other officer or employee shall have no power to indorse, pledge or hypothecate any notes, bonds or other obligations received by said corporation for money loaned until such power and authority shall have been given such cashier or other officer or employee by the board of directors, a written record of which proceedings first shall have been made."

The cases cited by appellant do hold that the cashier of the bank has no authority to sell notes belonging to the bank without authority from the board of directors evidenced by a written record.

It is the contention of respondent that such authority was given in the case at bar. The note was sold to plaintiff on June 20, 1924. The minutes of the meeting of the board of directors on May 3, 1924, contain among other things the following:

"Cashier called attention to small cash balance on hand and asked for instructions. Cashier ordered to borrow more money and rediscount."

The question is whether or not this resolution was sufficient to authorize the cashier to sell and indorse notes of the bank. We think it was. There is no doubt but that the resolution authorized the cashier to rediscount. Authority to rediscount is authority to sell and indorse notes belonging to the bank. [34 Cyc. 767; 2 Michie on Banks and Banking, page 1524; First National Bank v. Stone, 106 Mich. 367, 64 N. W. 487; Davenport v. Stone, 104 Mich. 521; Dorsey v. United States, 101 Fed. 746, 749.]

Contention is made that the order made by the board of directors is insufficient (1) because it does not mention any specific property to be sold or when a sale should be made, and (2) because it contains no limit as to time, and, if held to be valid, would permit the cashier to sell the property of the bank at any time in the future. We are not impressed with this contention. It is not necessary to the validity of the order, that it specify the specific property to be sold; or the date of the sale. It is not unreasonable to presume that the directors did not know what notes the cashier would be able to sell, and being in immediate need of money, made a general order authorizing him to sell and indorse any notes belonging to the bank. Of the second contention, it may be said that it was the duty of the directors to at least exercise ordinary care and diligence to ascertain the condition of the bank, and how it was being operated. If at any time the condition of the bank was such that it was not necessary to sell its assets in order to raise money, they could then revoke the order theretofore made authorizing the cashier to sell its notes.

Prior to 1915 sec. 11762, Revised Statutes 1919, read as follows:

"The cashier or any other officer or employee shall have no power to indorse, *sell*, pledge or hypothecate any notes, bonds or other obligations received by said corporation for money loaned until such power and authority shall have been given such cashier or other officer or employee by the board of directors . . ."

In 1915 this statute was amended and the word "sell" was omitted. It is the contention of respondent that since the Legislature, by the amendment of 1915 dropped the word "sell" from this statute, the cashier of a bank may now sell notes of the bank without an order from the board of directors. On this point, there seems to be an apparent conflict between the opinions of this court in the cases of Stover Bank v. Welpman, 284 S. W. 177, and Bank of Kirksville v.

Sloop et al., 200 S. W. 72, and the opinion of the St. Louis Court of Appeals in the case of Taylor v. Fauqua, 219 S. W. 971. The case of Stover Bank v. Welpman, supra, has been certified to the Supreme Court.

Since we hold that the order made by the board of directors on May 3, 1924, was sufficient to authorize the cashier of the bank to sell and indorse the note in suit to plaintiff, it is unnecessary for us to determine whether or not he could have done so without such order.

Respondent also contends (1) that under the provisions of section 835, Revised Statutes 1919, when plaintiff and her husband paid value for the note and it was delivered to them, title vested in them without indorsement; (2) that section 809, Revised Statutes, provides, "The indorsement or assignment of the instrument by a corporation or by an infant passes the property therein, notwithstanding that from want of capacity the corporation or infant may incur no liability thereon," therefore the property in the note passed to plaintiff although the indorsement created no liability on the part of the bank either as indorser or guarantor; and (3) that the note was payable on demand and was transferred within a reasonable time after its execution, plaintiff, therefore became a holder in due course for value under the provisions of section 813 of the Negotiable Instrument Law, and as such could sue in her own name under the provisions of sections 837 and 838 of said law.

It is true that plaintiff's petition does not plead title by indorsement, but simply pleads that plaintiff is a holder for value, but defendant's answer denies plaintiff's title and pleads that plaintiff secured the note from the bank without written authority from the board of directors. In addition to this, plaintiff's own evidence shows that she purchased the note from the bank and the cashier indorsed and delivered it to her.

In this state of the record, plaintiff's title depends on the authority of the cashier to sell, indorse and deliver the note, and the case must be determined on that issue.

"If, since the word "sell" has been omitted from the statute, the cashier of a bank may sell notes belonging to the bank, without written authority from the board of directors, there might be merit in respondent's contention.

The judgment of the trial court should be, and is affirmed. *Williams, C.,* concurs.

PER CURIAM:—The foregoing opinion by FRANK, C., is hereby adopted as the opinion of the court. All concur, except *Trimble, P. J.,* absent.